William Bush, Mary E. Bush, and James David Armstrong appeal from a summary judgment granted in favor of Alabama Power Company, the Country Club of Mobile (the Club), and Douglas Laing, in this action to recover damages for personal injuries.
In March 1980, the Club hired Lonnie Manning, an independent contractor, to replace the bulbs in the lights on its outdoor tennis courts. Manning's employee, James David Armstrong, assisted him. They assembled a scaffold on the tennis courts in order to be able to work on the lights located at the top of poles which varied in height from 25 to 35 feet. The scaffold, when assembled, was 33'3" tall.
William Bush was employed part time by Douglas Laing, the Club's tennis professional. Laing, in turn, was employed by the Club.
On March 27, 1980, when Manning and Armstrong had completed their work on the lights for the day, Laing instructed Armstrong and Bush to place the scaffold in the northeast corner of court six. As they were pushing the assembled scaffold to the corner, the upper section of the scaffold came into contact with an uninsulated 7200-volt distribution line owned by Alabama Power Company. At the point of contact, the electrical wire was approximately 30 feet above the level of the tennis court. Both young men were seriously injured as a result of the electrical shocks that they received.
In 1951, the Club had granted Alabama Power Company an easement to construct, operate, and maintain power lines across its property. That same year, the system of wires which this case involves was installed. Subsequently, the Club built the outdoor tennis courts and, around 1962, erected the lighting fixtures. The power lines traversed the easternmost side of the tennis courts. There were no lights or light poles along the side of court six or in the northeast corner where Bush and Armstrong were instructed to place the scaffold.
At some time before the date of the accident, Alabama Power had removed the fuses from the switch into which these wires were fed and had replaced them with solid links. In the event of a fault in the line, such as contact with a scaffold, a fuse would "blow" and cut off the electricity surging through the line within a matter of seconds. A solid link, however, prevents the line from de-energizing when a fault occurs. In this case, because there were solid links in the switch, the electricity continued flowing through the electrical lines and the scaffold and bodies of Bush and Armstrong until they were forcibly moved. Solid links are helpful where there are frequent power outages caused by such things as branches brushing the lines. The Club had experienced numerous power outages, necessitating repeated visits by Alabama Power to replace the fuses in this switch. The day after the accident, the line was reenergized, but the solid links were removed, and 60-amp fuses were reinstalled. In 1981, the entire system of wires was rerouted off the tennis court.
The Bushes and Armstrong separately filed suit against Alabama Power, the Club, and Laing, alleging that each of them had negligently and wantonly breached a duty of care owed to them. The Bushes' claim against Laing was the first to be disposed of. Summary judgment was granted in favor of Laing. The judgment was made final under Rule 54 (b), A.R.Civ.P., and the Bushes appealed to this Court. That appeal was subsequently dismissed upon the *Page 353 
Bushes' own motion. The two actions were then consolidated by the trial court.
The parties have engaged in extensive discovery, including interrogatories, depositions, and production of documents. The record on appeal, which is 3,500 pages, reflects the facts recited above, and in addition contains the pleadings, additional affidavits, and some exhibits. On October 10, 1983, two weeks before the trial of these actions was to commence, the trial court granted summary judgment as to all defendants in both suits. It is from this final judgment that the plaintiffs appeal.
We first address the judgment entered in favor of Alabama Power Company. The Bushes and Armstrong allege that the power company was negligent or wanton in that it failed to insulate the lines, failed to locate them in a safe position, and failed to employ a fuse in the switch.
This Court has stated, consistently and repeatedly, the duty of a power company with regard to the use and location of uninsulated electrical wires:
 "The duty of an electric company, in conveying a current of high potential, to exercise commensurate care under the circumstances, requires it to insulate its wires, and to use reasonable care to keep the same insulated, wherever it may reasonably be anticipated that persons, pursuing business or pleasure, may come in contact therewith. This statement of the rule implies that, in the absence of statute or municipal ordinance, it is not necessary to insulate wires which are so placed that no one could reasonably be expected to come in proximity to them."
Foster v. Alabama Power Company, 395 So.2d 27, 30 (Ala. 1981), citing Curtis on Law of Electricity, § 510. In other words, Alabama Power must either insulate its electrical lines, or locate them in a position where they pose no danger to human life. However, the duty to insulate does not arise absent notice, actual or constructive, that persons may come into contact with the uninsulated wires. Alabama Power Company v.Alexander, 370 So.2d 252 (Ala. 1979).
On the other hand, whether a power company has a duty to use a fuse or some type of automatic circuit breaker in its switches is being presented to this Court for the first time. Armstrong cites Alabama Power Company v. Guy, 281 Ala. 583,206 So.2d 594 (1967), as general support for this duty. That case is distinguishable because the plaintiff therein alleged that he was injured as a result of Alabama Power's failure to properly maintain and repair the oil circuit breaker. Whether there was a duty to use an oil circuit breaker in the first place was not an issue.
Other jurisdictions, however, have recognized a power company's duty to employ a fuse or some other safety device when it is foreseeable that persons may come into contact with the uninsulated wire. Ledet v. Lockport Light and Power Co.,15 La.App. 426, 132 So. 272 (1931); Abilene Gas and Electric Co.v. Thomas, 194 S.W. 1016 (Tex.Civ.App. 1917). There was also deposition testimony in this case by an expert that a fuse provides protection to persons who may come into contact with an uninsulated wire. Several electrical engineering experts testified and agreed that the power company's failure to employ a fuse in this switch fell below good electrical practices. From this arises an inference that when there arises a need to protect persons from harm, there is a duty to use a fuse instead of a solid link. The testimony was that a fuse would have "blown" and the wire would have been de-energized, substantially reducing the severity of the injuries to Bush and Armstrong.
Neither the duty to insulate an electrical wire nor the duty to use a fuse which quickly de-energizes a wire after a fault arises unless it is foreseeable that persons may come into contact with the wire. The ultimate test of a duty to use care is found in the foreseeability that harm may result if care is not exercised. Havard v. Palmer Baker Engineers, Inc.,293 Ala. 301, 302 So.2d 228 (1974). This is a general principle of negligence *Page 354 
law. The question then, is whether, under the facts developed and offered both in support of and in opposition to Alabama Power Company's motion for summary judgment, it was foreseeable that persons would come into contact with the electrical wires which stretched across the tennis court at a height of 30 feet. We cannot say that it was or was not, as a matter of law.
It is undisputed that the tennis courts and the lights for the courts had been in place since the 1960's. It is also undisputed that the power company had been out to the site to work on the switch into which this system of wires is attached. The switch is located on a pole in one corner of the tennis courts, and, from the switch and this pole, it is possible to see the tennis court layout, the lights, and the system of wires. Additionally, the power company had been on the site to do extensive repairs to this system after Hurricane Frederic came through in September 1979. This accident occurred less than seven months later.
The Bushes and Armstrong contend that on these facts reasonable men may differ as to whether the power company knew, or should have known, that persons may come into contact with the uninsulated wire. We agree. The record shows that the wires crossed over the tennis court area, and that there were lights at various spots around the tennis courts. The lights were atop poles 25 to 35 feet in height. Whether the power company, under these facts, should have foreseen that someone would come in contact with its uninsulated wires while repairing the lights is purely a question of fact. "Where the facts, upon which the existence of a duty depends, are disputed, the factual dispute is for resolution by the jury." Alabama Power Company v.Alexander, 370 So.2d at 254. Therefore, it was error to grant summary judgment in favor of Alabama Power Company, because a genuine dispute exists.
Against the Club, the Bushes and Armstrong assert claims for damages stemming from the Club's negligent or wanton failure to provide a safe work place, failure to warn of the dangerous and unsafe condition which existed on the tennis courts, and failure to notify the power company of the dangerous condition.
It is undisputed that Armstrong is the employee of an independent contractor (Manning). This was settled in the case of Armstrong v. Aetna Insurance Company, 448 So.2d 353 (Ala. 1984), an earlier decision of this Court arising out of this accident. Bush is employed by Laing, not the Club. Laing is an employee of the Club. Bush is an invitee of the Club.
The only status of the Club with which we are concerned in this case is its position as a landowner. Its duty as an employer is not in issue, because neither Bush nor Armstrong is its employee. If it were an employer of Bush and Armstrong, it would have a duty to provide a safe work place. However, as a mere landowner, it has no such duty. Therefore, the Bushes' and Armstrong's claim for damages resulting from the Club's failure to provide a safe work place must fail.
The Club, as a landowner, has a duty to invitees to maintain the premises in a reasonably safe condition, or if it is unsafe, to warn of all hidden defects and dangers which are known by it, but which are unknown by, or are not such as ought to be known by, the invitee. Quillen v. Quillen, 388 So.2d 985
(Ala. 1980). Bush and Armstrong are invitees. They entered the property to perform work for the benefit of the Club. The Club's duty to warn of a dangerous condition arises only if the condition is hidden from the invitees and it is known to, or ought to be known to, the Club.
The Bushes and Armstrong argue that the electrical lines were a hidden danger. The Club, on the other hand, contends that the wires were open and obvious. It is undisputed that the wires run directly over the tennis courts and that the view of them is not obstructed in any way from the level of the tennis court. However, there was *Page 355 
testimony from Alabama Power's employees that from the ground, it is almost impossible to differentiate an insulated wire from an uninsulated one. There was also testimony that even if a person knows that a wire is uninsulated, it is still impossible to determine whether it is energized. It is the fact that the wire is uninsulated and energized that makes it dangerous. The engineering experts stated that sometimes people, even though they may observe the wires, are not consciously aware of them because they become part of the background and environs. Whether the lines were a hidden danger or whether they were, in fact, open and obvious is a question of fact within the province of the jury. There is evidence that although the wires were in clear view, they were not "seen," and the fact that they were energized and uninsulated was not obvious. There is also evidence that the view of the wires was clear and unobstructed and that Bush and Armstrong should have seen them and realized the danger.
Similarly, it is a question of fact whether the Club, through its agents and employees, knew of the dangerous condition existing on its property. There was testimony from Laing that he knew the wires were there. Whether he realized that they presented a dangerous condition is, again, a fact question. Several other Club employees testified that they were aware of the wires but, again, whether they were aware of any danger is a question of fact for the jury. Whether or not Laing was negligent is a question of fact.
A landowner's duty to warn arises only if the danger is known, here to the Club, and unknown to the invitees. These preliminary fact questions are for the jury. It was error to grant the Club's motion for summary judgment on these disputed facts.
The fact that both Alabama Power and the Club may have been negligent does not, as a matter of law, relieve either one from liability. This Court has long recognized that to be liable for injuries caused by negligence, it is enough if the negligence is but one cause of the injuries, so long as it is also a proximate cause of the injuries:
 "`"* * * `As a general rule, it may be said that negligence, to render a person liable, need not be the sole cause of an injury. It is sufficient that his negligence, concurring with one or more efficient causes, other than plaintiff's fault, is the proximate cause of the injury.' * * *"
 "`So also in this case, negligence may have existed on the part of others which concurred with the alleged negligence of the appellee to proximately cause the appellant's injury. To recover, the negligence, causing the appellant's injury in this case, need not be the sole proximate cause of her injury, but only its proximate cause, if she was free from negligence contributing thereto.'"
Lawson v. General Telephone Company of Alabama, 289 Ala. 283,290, 267 So.2d 132, 138 (1972), quoting Shepherd v. GardnerWholesale, Inc., 288 Ala. 43, 256 So.2d 877 (1972), in turn quoting Chambers v. Cox, 222 Ala. 1, 3, 130 So. 416, 418 (1930) (emphasis added in Lawson).
The defendants contend that the two men were contributorily negligent because they were not paying attention and looking out for their own safety as reasonable persons might have, and that had they been doing so, they would not have come into contact with the wires. We have discussed the testimony before the court on motion for summary judgment that persons may observe electrical wires but not be consciously aware of them or know that they are uninsulated and energized. It is a question of fact whether Bush and Armstrong appreciated the danger and used due care to protect themselves. Again, this is a question for the jury. Alabama Power Company v. Mosley,294 Ala. 394, 318 So.2d 260 (1975). It was error to grant summary judgment in favor of the power company, the Club, and Laing on this basis. *Page 356 
The judgment of the trial court is reversed, and the cause is remanded for trial.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES, SHORES and BEATTY, JJ., concur.