Beverly Kay JOHNS,
Plaintiff-Appellant,

v.

PETTIBONE CORPORATION, et
al., Defendants,

Frank Van Meter, et al.,
Defendants-Appellees.

No. 84–7361.

United States Court of Appeals,
Eleventh Circuit.

Aug. 26, 1985.

As Amended on Denial of Rehearing
and Rehearing En Banc
Nov. 12, 1985.

M. Clay Alspaugh, Birmingham, Ala., for plaintiff-appellant.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Associate · Gen. Counsel, Thomas C. Doolan, Edwin W. Small, Tennessee Valley Authority, Knoxville, Tenn., for Van Meter.

Before RONEY and HILL, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

The Opinion of this Court previously published is hereby withdrawn and the following Opinion and Decision is published in lieu thereof.

## I. BACKGROUND

Beverly Kay Johns and her minor children appeal from the decision of the district court granting summary judgment to the defendant employees of the Tennessee Valley Authority in a suit for the wrongful death of her husband, Gary Johns. Johns, an ironworker employed by an independent contractor, Combustion Engineering, Inc. ("CE"), was electrocuted at the TVA Widows Creek Steam Plant when the boom of a power crane leased to CE came into contact or near contact with a live TVA electric power transmission line at the plant. CE had contracted with TVA to design, fabricate, and erect a gas desulphurization system at the plant.

The appellee TVA employees held the positions of chief of construction services, chief of safety, supervisor of safety engineering, plant superintendent for power production, assistant superintendent for power production, and safety supervisor at the plant. The district court entered summary judgment as to these defendants on the basis that their duty to the plaintiff could be no greater than TVA's, that as a landowner TVA had no duty to warn invitees of "open and obvious" dangers such as overhead transmission lines, and that the contract between TVA and CE imposed no responsibility on TVA for the safety of CE's employees. The plaintiffs' claims against the owner/operator of the crane and the manufacturer of the crane were not dismissed by the district court and are not before this Court at this time. A separate suit against TVA itself was dismissed because an action for wrongful death, being punitive in nature under Alabama law, will not lie against TVA. The plaintiffs did not appeal that decision.

## II. ISSUES

There are only three issues for decision by this Court.

1. Did the district court err in holding that defendants had no common law or statutory duty to warn of the hazard posed by the overhead transmission lines because the lines were open and obvious?

2. Did the district court err in holding that the contract between TVA and CE imposed no duty on TVA to provide for the safety of the CE employees?

3. Are the TVA employees entitled to immunity?

## III. DISCUSSION

### A. *Duty Under Common Law*

The district court granted summary judgment to the defendants on the ground

that because the transmission lines were in plain sight, the dangerous condition was open and obvious and, therefore, as a landowner, TVA had no duty to warn invitees of the hazard. The court relied on *Beck v. Olin Co.*, 437 So.2d 1236 (Ala.1983); *Hill v. United States Steel Corp.*, 640 F.2d 9 (5th Cir., Unit B, 1981); and *LeSuer v. United States*, 617 F.2d 1197 (5th Cir.1980).

As to this issue, appellants contend that while the transmission lines themselves were obvious, their condition was not and thus that they were not an obvious hazard. Appellants point out that the lines were uninsulated and energized, and point to testimony from defendants that, at least to an untrained eye, it would be impossible to tell from the ground whether lines were insulated or not, and that even a trained individual could not tell from the ground whether the lines were energized. After the judgment below and after the briefs here had been filed, the Alabama Supreme Court decided the case of *Bush v. Alabama Power Co.*, 457 So.2d 350 (Ala.1984), which the appellant submitted as supplemental authority. This case is controlling.

In *Bush*, the Alabama Supreme Court reversed a lower court decision granting summary judgment both to the power company and to the landowner (a country club). In *Bush*, an employee of an independent contractor hired to work on the lights at a tennis court was injured when he pushed a scaffold into uninsulated wires of the power company above one edge of the tennis courts. As to the power company, the court stated:

> The duty of an electric company, in conveying a current of high potential, to exercise commensurate care under the circumstances, requires it to insulate its wires, and to use reasonable care to keep the same insulated, wherever it may reasonably be anticipated that persons, pursuing business or pleasure, may come in contact therewith. This statement of the rule implies that, in the absence of statute or municipal ordinance, it is not nec-

> essary to insulate wires which are so placed that no one could reasonably be expected to come in proximity to them.... In other words, Alabama Power must either insulate its electrical lines, or locate them in a position where they pose no danger to human life. However, the duty to insulate does not arise absent notice, actual or constructive, that persons may come into contact with the uninsulated wires.

The court held that it could not say as a matter of law that it was not foreseeable that individuals might come into contact with the wires. Therefore, the court held that summary judgment was improper.

As to the landowner (the country club), the court noted that the landowner's duty to invitees is only to warn of hidden dangers known to it and unknown, or not such as ought to be known, to the invitee. The court noted, however, that while it was undisputed that the lines were clearly visible, there was testimony that one could not tell from the ground whether the lines were insulated and energized. Since only uninsulated and energized lines created a hazard, the court held that whether this danger was open and obvious was a question for the jury. Thus, the court held that summary judgment was improper.

So, too, here there was testimony before the court in depositions that workers did not know and could not determine visually whether the lines were "live" or whether they were insulated or uninsulated.

■ We conclude that *Bush* is binding authority for the proposition that the issue of openness and obviousness of the danger is a fact issue which cannot be disposed of by summary judgment. Similarly, *Bush* is authority for the proposition that TVA, as a power company, has a duty to insulate its wires if persons could reasonably be expected to come into contact with them. Under *Bush*, the issue of whether TVA had actual or constructive notice that persons

might come into contact with the wires is a fact issue which cannot be disposed of on summary judgment.

### B.  *Duty Under the Contract*

The district court held that the health and safety provisions of TVA contracts, which give TVA the right to inspect the operations of independent contractors to determine whether they are following proper safety procedures, do not create a duty on TVA to provide for the safety of the employees. *Musgrave v. TVA*, 391 F.Supp. 1330 (N.D.Ala.1975).

■ Appellants concede that the safety provisions do not create a duty to employees of contractors. Appellants argue, however, that another clause in the contract with CE does create a duty. This clause was not dealt with by the trial court. It provides as follows:

> EQUIPMENT/SERVICES TO BE FUR- NISHED BY THE PURCHASER. The following facilities and services have not been included in the company's scope of supply at this time. These items will be required for the construction work to be performed by the company and would normally be furnished by purchaser or others at no cost to the company. Upon receipt of the purchaser's timely written request, the company will, when possible, attempt to provide any of these items at an adjustment to the base contract price.

> A.  Adequate ground space for unloading, warehousing and storage adjacent to the erection site. . . .

> E.  Unobstructed access to erection site and storage area on roads maintained by the purchaser. The grounds surrounding these areas shall be level and suitable for mobile crane and truck operations.

Appellants contend that these clauses imposed on TVA and the individual defend- ants a duty to provide storage areas "suitable for mobile crane and truck operations" and that the fact that the accident occurred shows that the area provided was not "suitable" for mobile crane operations. Appellants contend that this is sufficient at least to create a jury question.

The difficulty with this contention of appellants is that even if the plaintiffs are third party beneficiaries of the contract appellants cite no case, and we have found none, that holds that this would create a contractual claim against anyone other than the TVA, the other party to the contract. The trial court did not err in holding that plaintiffs had no claim against the individual defendants based on the quoted language of the contract.

### C.  *Immunity*

The TVA defendants seek to support the trial court's grant of summary judgment on an alternative ground: that regardless of their common law liability, they could not be subject to suit because they enjoyed absolute immunity from suit.

To test the merits of that defense, we accept the appellees' own statement as to what must be shown by a government employee to establish his or her immunity:

> It has been settled since *Barr v. Matteo*, 360 U.S. 564 [79 S.Ct. 1335, 3 L.Ed.2d 1434] (1959), and *Howard v. Lyons*, 360 U.S. 593 [79 S.Ct. 1331, 3 L.Ed.2d 1454] (1959), that, as a matter of Federal law, Federal employees *exercising discretionary functions and acting within the outer perimeters of their lines of duty are absolutely immune from suit for common law tort liability* such as that sought to be imposed here, even as to suits founded upon alleged malicious acts. (Emphasis added) (Footnotes omitted).

■ It is necessary to quote appellees' statement as to the basis for establishing

immunity because, although repeating it several times, they also contend that all that need be shown for the privilege to be available is that the complained of conduct "was within the outer perimeter of [defendant's] line of duty." This is not the law, as is made clear by *Barr* which states a government employee enjoys immunity only if the challenged conduct is a discretionary act *and* is within the outer perimeter of the actor's line of duty.[1]

As noted above, these defendants raised the defense of their immunity before the trial court but that defense was not mentioned in the court's order dismissing the case on summary judgment. It is true, as stated by the appellants, that the court in *Barr* recognized that in appropriate circumstances, *i.e.*, in the case of a discretionary act within the scope of the employee's duties, the privilege of immunity might be available to employees of lesser rank than that of cabinet officers or other heads of departments.

Appellants argue here that we should conclude that the acts performed by the TVA employee defendants could under no circumstances satisfy the requirements in *Doe*, because the failures charged to these defendants could not amount to "discretion-ary" acts in that they did not involve judgments or policy decisions of the kind generally recognized as being comprehended within the term "discretionary." Their conduct, according to the appellants, was rather "operational".

However, we conclude that this is an issue that should first be dealt with by the district court. Certainly, we could not conclude that these were discretionary acts, determining that there were no disputed facts bearing on this issue, nor should we conclude that they were not discretionary acts without a full development of the facts.

## D. *Conclusion*

The judgment is REVERSED and the case is REMANDED to the district court for further proceedings not inconsistent with this opinion.

---

**1.** The predecessor of this Court, the Court of Appeals for the Fifth Circuit, by whose decisions prior to October 1, 1981, we are bound, has used language that has created some confusion in this area: "Having acted within the outer perimeters of their official duties defendants are entitled to the protection of official immunity." *Evans v. Wright*, 582 F.2d 20, 22 (5th Cir.1978). Later, however, this Court had occasion to state the standard as *"discretionary actions* falling within the officer's official duties." (Emphasis added.) *Stepanian v. Addis*, 699 F.2d 1046, 1048 (11th Cir.1983). Since *Barr* and the subsequent decision in *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973) are both binding on both the Court of Appeals for the Fifth Circuit and this Court, it is apparent that our later case of *Stepanian* states the correct standard, as is conceded by the appellees here. It is apparent that in stating only the requirement that the acts complained of were within the duties of the government officials, the Court in *Evans* was dealing with a situation where there was no issue then before the Court as to the discretionary nature of the act of the defendants. We make this comment to make it plain that, by adopting the conceded standard here, we are not making a decision contrary to a prior decision binding on this Court.