Beverly Kay **JOHNS**, et al., Plaintiffs–Appellants,

**Transportation Insurance Company**, Intervenor,

v.

**PETTIBONE CORPORATION**, etc., et al., Defendants–Appellees.

No. 86–7250.

United States Court of Appeals, Eleventh Circuit.

April 27, 1988.

---

M. Clay Alspaugh, Hogan, Smith, Alspaugh, Samples & Pratt, P.C., Birmingham, Ala., for plaintiffs-appellants.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Deputy Gen. Counsel, Edwin W. Small, Thomas C. Doolan, Knoxville, Tenn., for Van Meter, C. Morgan, J. Leonard, W. Neperud, R. Massey and R. Padgett.

Robert M. Girardeau, Birmingham, Ala., for Pettibone Corp.

Before RONEY, Chief Judge, JOHNSON, Circuit Judge, and ESCHBACH *, Senior Circuit Judge.

RONEY, Chief Judge:

Beverly Kay Johns and her minor children appeal from the decision of the district court granting summary judgment to defendant employees of the Tennessee Valley Authority (TVA) in a suit for the wrongful death of her husband, Gary Johns. Johns was working for Combustion Engineering (CE) which was doing work for TVA as an independent contractor when Johns was electrocuted when the boom of a crane came in contact or near contact with a TVA electric power transmission line. We affirm.

This Court previously vacated and remanded a prior district court order granting defendants' motion for summary judgment. *Johns v. Pettibone*, 769 F.2d 724 (11th Cir.1985). The district court had en-

tered summary judgment as to these defendants on the basis that their duty to the plaintiff could be no greater than TVA's, that as a landowner TVA had no duty to warn invitees of open and obvious dangers such as overhead transmission lines, and that the contract between TVA and CE imposed no responsibility on TVA for the safety of CE's employees. A separate suit against TVA had been dismissed because an action for wrongful death, being punitive in nature under Alabama law, will not lie against TVA.

At first, this Court, without considering the correctness of the district court decision under Alabama negligence law, affirmed the grant of summary judgment for defendants on the basis of official immunity. *Johns v. Pettibone*, 755 F.2d 1484 (11th Cir.1985). The Court held that the activities of the defendants were wholly within the scope of their employment with TVA.

On rehearing, that opinion was withdrawn. As to immunity, the Court held that the activities of defendant not only had to be within the scope of their duties but must also be "discretionary acts." We noted that we could not conclude the acts were discretionary, nor could we conclude they were non-discretionary, but that this issue should first be dealt with by the district court. *Johns v. Pettibone*, 769 F.2d 724 (11th Cir.1985).

We then held that the question whether the danger was open and obvious was a fact issue which could not be decided by summary judgment. As to the alleged duty of care under the contract, we upheld the decision of the district court that plaintiff has no claim against these individual defendants under the contract.

On remand, the defendants filed a revised motion for summary judgment asserting two grounds: (1) that as Government employees, defendants are entitled to absolute immunity from common law tort

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

suits, and (2) that defendants breached no duty owed to plaintiffs' decedent.

The district court again granted summary judgment based on two grounds: *first,* that the contract between TVA and CE effectively delegated to CE the duty to provide for Gary Johns' safety, and *second,* that these defendants were entitled to immunity from common law tort suits because their conduct was a discretionary act. We affirm on both grounds.

### I. *Immunity*

This case was heard before a panel of this Court on December 4, 1986. As a split in the Circuits existed on the requirements for official immunity, it was decided to hold the case awaiting the Supreme Court's decision on the point. *See Heathcoat v. Potts,* 790 F.2d 1540 (11th Cir.1986), *petition for cert. filed* November 26, 1986, 55 U.S.L.W. 3426; *Erwin v. Westfall,* 785 F.2d 1551 (11th Cir.1986), *cert. granted,* — U.S. ——, 107 S.Ct. 1346, 94 L.Ed.2d 517 (1987). If the Supreme Court had held that to get immunity it is only necessary to show that the challenged activity of the federal employee was fully within the scope of his authority and that he was carrying out normal functions of his job, then our first opinion in this case would be correct and the defendants would be entitled to summary judgment on the immunity ground. In *Westfall v. Erwin,* — U.S. ——, —— n. 2, 108 S.Ct. 580, 583 n. 2, 98 L.Ed.2d 619, 624 n. 2 (1988), the Supreme Court, however, has now upheld the standard of this Circuit as applied in our second opinion in this case. *Johns v. Pettibone,* 769 F.2d 724 (11th Cir.1985). The Supreme Court stated that "absolute immunity should be available only when the conduct of federal officials is within the scope of their official duties *and* the conduct is discretionary in nature." *Westfall v. Erwin,* — U.S. ——, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988) (emphasis in original). After the decision in *Westfall,* the Court denied certiorari in *Heathcoat v. Potts,* 790 F.2d 1540 (11th Cir.1986), *cert. denied,* — U.S. ——, 108 S.Ct. 747, 98 L.Ed.2d 761 (1988), which had applied the same standard as *Johns v. Pettibone,* 769 F.2d 724.

■ Since no assertion was made that defendants were acting outside the scope of their official duties, the district court properly addressed the issue of whether defendants' decision to delegate the provision of safety to the independent contractor was a decision involving a discretionary function such that the individual defendants should be insulated from liability for having made such a choice. The following portion of the district court's memorandum opinion properly decided this issue.

The TVA defendants alternatively contend that they enjoy immunity from common law tort suits because of their status as government employees. As the Court of Appeals has framed this issue in its opinion in this case, the only remaining question is whether the defendants' challenged conduct is a discretionary act.

The Eleventh Circuit recently has restated the viewpoint expressed in *Smith v. United States,* 375 F.2d 243, 246 (5th Cir.), *cert. denied,* 389 U.S. 841 [88 S.Ct. 76, 19 L.Ed.2d 106] (1967), that discretionary acts may not be determined by a rigid distinction between planning and operational activities. *Alabama Electrical Cooperative v. United States,* 769 F.2d 1523, 1527 n. 1 (11th Cir.1985). The court also recognized the *Smith* rationale that the essence of the governmental immunity question is the nature and quality of the discretion involved in the conduct under scrutiny. *Id.* Applying that analysis to the facts before the Court, it is apparent that the TVA defendants are entitled to such immunity.

In *Feyers v. United States,* 749 F.2d 1222 (6th Cir.1984), the employee of an independent contractor was injured in an operation supervised by the contractor. The employee sued the Government[2] for its alleged negligent inspection of the contractor's operation of the facility and its breach of a nondelegable duty to provide a safe work area. The Sixth Circuit affirmed dismissal of the complaint, holding that the Government's decision to delegate safety responsibility to the contractor was clearly a discretionary function giving rise to governmental immuni-

ty. 749 F.2d at 1227. In *Maltais v. United States*, 546 F.Supp. 96 (N.D.N.Y. 1982), *aff'd*, 729 F.2d 1442 (2d Cir.1983), a contractor's employee was killed in a construction accident. The court dismissed a wrongful death claim against the Government, holding that a governmental agency's delegation of safety responsibility was a discretionary act and therefore gives rise to an exemption from Federal Tort Claims Act liability. 546 F.Supp. at 101. The *Maltais* court further held that a governmental agency " 'may have considerable power to control the activities of private companies through contracts, but when [it] decides the extent to which it will undertake to supervise the safety procedures of private contractors, it is exercising discretion at one of the highest levels.' " *Id.* (citations omitted).

Other cases reiterate the sentiment expressed in *Feyers* and *Maltais*, that safety decisions represent an exercise of discretion giving rise to governmental immunity. *See, e.g., Ford v. American Motors Corp.*, 770 F.2d 465, 467 (5th Cir.1985) (evaluation of hazards and subsequent safeguards are protected discretionary acts); *Hylin v. United States*, 755 F.2d 551 (7th Cir.1985) (Federal Mine inspectors' duty to enforce safety standards held discretionary); *Chrisley v. United States*, 620 F.Supp. 285, 290 (D.S. C.1985) (restriction of certain areas and decision to post warning signs held discretionary).

The rationale of these cases is persuasive and appropriate to resolve the TVA defendants' claim of governmental immunity. "When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, [467] U.S. [797], 104 S.Ct. 2755 [81 L.Ed. 2d 660] (1984). The TVA defendants are therefore immune from the plaintiffs' claims.

---

[2] The Eleventh Circuit has held that the standard for determining a discretionary function that operates as an exception to governmental liability under the Federal Tort Claims Act, 28 U.S.C. § 2680(a) (1982), is identical to the standard for immunity of individual Government employees. *See Franks v. [Bolden,* 774] F.2d 1552 (11th Cir.1985). Therefore, the FTCA cases discussed in the text are also appropriate in the context of the TVA defendants.

*Johns v. Pettibone Corp.*, No. CV82–L– 5630–NE (N.D.Ala. March 25, 1986).

## II. *Delegation*

It has long been recognized that an employer may delegate the duty of providing a safe workplace to an independent contractor. *See Restatement (Second) of Torts* § 413 (duty to provide for taking of precautions against dangers involved in work entrusted to independent contractors). Certainly when TVA, the employer of defendants, delegated its duty to the independent contractor, defendant employees of TVA could not be liable for the breach of a duty which TVA itself had delegated to others.

The construction contract here incorporated TVA's Hazard Control Standards and required compliance with OSHA regulations. Under this contract, CE agreed "to insure that the foregoing provisions [were] being complied with at all times." Under both the Hazard Control Standards and the OSHA regulations, individuals were required to maintain, at minimum, a ten-foot distance between overhead power lines and all machinery unless such lines were deenergized and visibly grounded. *See, e.g.,* 29 C.F.R. § 1926.550.

Plaintiffs do not contest the validity of the construction contract or the applicable safety standards and regulations. Instead, plaintiffs argue that at the time of his death decedent was not working on an activity covered by the contract to construct the flue gas desulferization system (scrubber) at the Widows Creek Steam Plant. To that end, plaintiff has introduced a deposition by defendant Frank Van Meter that the work in which decedent was involved at the time of the accident was "[s]eparate from the other requirements of this contract, and accordingly will not have impact on the contractual provisions of price."

This evidence, however, does not contradict the testimony of defendant Van Meter in his affidavit of September 23, 1983. In it, he states, that in the summer of 1980, after problems were detected in the ball mill associated with the scrubber, the construction contract was amended to provide for the installation of TVA's spare ring gear into the modified ball mill. As such, the project in which the decedent was engaged was clearly part of the overall construction contract in which CE was charged with providing for the safety of its employees.

Plaintiffs allege that the fact that the contract under which the work was done provides that CE would take the necessary special precautions does not necessarily relieve TVA from all liability. Section 416 of the *Restatement (Second) of Torts* provides that an independent contractor's failure to take special precautions may impose liability on its employer, even though the employer provided for such precautions in the contract, if the employer should have recognized that the project was likely to create a peculiar risk of physical harm to others. *See Restatement (Second) of Torts* § 416 (work dangerous in absence of special precautions); *see also id.* § 427. In essence, plaintiffs contend that the power lines which crossed the storage area posed such a peculiar risk to the employees of CE, that TVA cannot be permitted to delegate the responsibility for the accident to CE.

Plaintiffs assert that this peculiar risk was posed by the uninsulated nature of the high power lines and because they crossed the accident area below the OSHA standard for power lines traversing a storage area. Since neither contention implicates a genuine issue of material fact, summary judgment is appropriate. In the first instance, while *Bush v. Alabama Power Co.* does state that a power company is required "to insulate its wires ... whenever it may reasonably be anticipated that persons, pursuing business or pleasure may come into contact therewith," it is not dispositive of this case. *Bush v. Alabama Power Co.*, 457 So.2d 350 (Ala.1984) (citing *Foster v. Alabama Power Co.*, 395 So.2d

27, 30 (Ala.1981)). *Bush* concerned the power company's duty, absent any warnings, toward the public with respect to electric lines across premises not owned by the company. The instant case is far more analogous to *Glenn v. United States Steel Corp., Inc.*, 423 So.2d 152 (Ala.1982). In *Glenn*, an employee of an independent contractor was electrocuted on the premises of United States Steel's Fairfield Works when the boom of a crane being used by the contractor came into contact with an overhead, uninsulated electric line which was owned, maintained and controlled by United States Steel and which hung over a road used to haul scrap. Warnings and precautions were contained within the construction contract, and warning signs had been placed on either side of the place where the wires cross over the roadway. On these facts, the Alabama Supreme Court held the relationship of landowner to independent contractor governed the scope of the duty and that United States Steel, as landowner, owed decedent no duty beyond warning of the dangerous condition.

In the second instance, plaintiffs assert that TVA was not abiding by its own recognized standards of safety. Defendant Roland Massey stated that unless power lines were more than thirty feet from the ground, TVA would not utilize such an area as a storage yard without posting proper warnings. Although Massey stated that he believed the lines were not low enough to require such warning signs, the OSHA accident report concluded that the line was within the twenty-four foot standard. The accident, however, did not occur in the storage yard. The crew, of which decedent was a member, was instructed to retrieve the ring gears from the TVA storage area and load them onto a flat bed trailer. After they had moved a distance, it appeared that the rings needed to be repositioned on the trailer before further transportation. When the crane's outriggers were extended and the boom was moved into position, it came into contact with one of the uninsulated, high-power transmission lines. Plaintiffs have not alleged that the location of the accident was part of the storage yard

or that TVA stored any materials there. *See generally Restatement (Second) of Torts* § 426 (negligence collateral to risk of doing the work).

■ As an alternative ground, the district court stated that even if there was some duty on the part of the individual defendants which had not been delegated to others, sufficient warning of the dangerous nature of the overhead power lines had been given to CE. The construction contract contained specific warnings concerning overhead power lines and required CE to regard any overhead wire as an energized line until determined otherwise and visibly grounded. *See, e.g.,* 29 C.F.R. § 1926.550. Plaintiffs contend that the members of decedent's crew were never warned of the danger. The evidence of the warning given to CE, however, is sufficient, as TVA's duty as landowner is satisfied by the written warnings provided to the supervisory personnel of CE. *See Gober v. United States,* 778 F.2d 1552 (11th Cir.1986).

The district court properly granted defendant's renewed motions for summary judgment.

AFFIRMED.