[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 456 
This wrongful-death action was brought on behalf of Dominic DiBiasi ("Dominic"), who was electrocuted when he grabbed an uninsulated high-voltage transmission line hanging over the roof of the house on which he was standing. The transmission line, owned by Hartselle Utilities ("Hartselle"), was attached to a utility pole owned by Joe Wheeler Electric Membership *Page 457 
Corp. ("Joe Wheeler"). Narriman DiBiasi, Dominic's mother, and Julia Brewer, Dominic's common-law wife, as co-administratrixes of Dominic's estate (hereinafter referred to collectively as "DiBiasi"), filed a wrongful-death action against both Hartselle and Joe Wheeler, alleging negligence and wantonness on the part of both parties. Joe Wheeler moved for a summary judgment, arguing that its pole was not defective and that Joe Wheeler owed no duty to Dominic. The trial court granted Joe Wheeler's motion and entered a judgment in its favor, stating that "the plaintiffs' claims set forth against [Joe Wheeler] in their original Complaint and all amendments thereto are dismissed with prejudice." The summary judgment was made final pursuant to Rule 54(b), Ala. R. Civ. P.
DiBiasi now appeals, arguing that there is substantial evidence indicating that Joe Wheeler owed a duty to Dominic. However, because DiBiasi makes no apparent argument in support of her wantonness claim, it is waived, and, therefore, we do not address it. See Pardue v. Potter 632 So.2d 470, 473
(Ala. 1994) ("Issues not argued in the appellant's brief are waived." (citing Deutcsh v. Birmingham Post Co.,603 So.2d 910 (Ala. 1992); Bogle v. Scheer, 512 So.2d 1336
(Ala. 1987))). We affirm the trial court's judgment.
 Facts and Procedural History
On October 11, 2004, Dominic was residing with Alan and Sherry Holt at 1607 Main Street West, Hartselle, Alabama, to which Hartselle supplies the power. On the morning of the accident, he was working around the house when he and Alan decided to climb onto the roof to inspect the gutters. While they were on the roof, the men saw two lines above the roof of the Holts' house — one line was 2 to 2.5 feet above the peak of the roof, while the other was approximately 5 feet above the peak of the roof. The two men discussed attaching a pulley to the lines and sliding down, in the belief that the lines were support cables for the nearby utility poles. It appears that both men grabbed the lower of the two lines, a neutral line, and determined that "it would probably hold [them]." Dominic was curious about the higher of the two lines, and he grabbed it to determine whether it would hold them; that line, however, was an uninsulated 7,200-volt transmission line, and Dominic was killed when he grabbed it.
The line that electrocuted Dominic was an electric transmission line owned by Hartselle that crossed the Holts' house as it ran between two poles — one owned by Hartselle and the other owned by Joe Wheeler. Hartselle attached its line to Joe Wheeler's pole as part of a "joint-use" or "pole-sharing" agreement. The agreement allows the sharing of poles for the transmission of power to the companies' respective customers without the need to duplicate infrastructure.
DiBiasi sued both Hartselle and Joe Wheeler, alleging both negligence and wantonness. The negligence and wantonness claim against Joe Wheeler alleges as follows:
 "a. Defendant Joe Wheeler failed to properly place the utility pole on the south end of the residential property located at 1607 Main Street West, Hartselle, Alabama, and allowed the electric power line in question to be in close proximity to the house located at such address;
 "b. Defendant Joe Wheeler failed to install a utility pole on the south end of the residential property located at 1607 Main Street West, Hartselle, Alabama, which was sufficient in height to allow for the proper clearance of the utility line in question over the home located on such property; *Page 458 
 "c. Defendant Joe Wheeler failed to properly construct, install, or erect an electric power pole on the south end of the residential property located at 1607 Main Street West, Hartselle, Alabama, and, thus, allowed for the power line in question to be hung or run in a manner that did not comply with the minimum clearance construction standards of the electrical industry for such lines; and
 "d. Defendant Joe Wheeler failed to properly maintain and inspect the electric power pole located on the south end of the residential property at 1607 Main Street West, Hartselle, Alabama, and thereby allowed for a dangerous condition to be created by the line in question being in close proximity to the house located on such property."[1]
Joe Wheeler argued in its motion for a summary judgment that it "had no duty to inspect, maintain, or supervise the power lines of another company, Hartselle." Joe Wheeler further argued that "[n]o evidence exists that [it] had any notice of a dangerous condition in the [Hartselle] lines and no evidence exists that Joe Wheeler was required to or was expected to inspect the power lines servicing another utility company's customer." DiBiasi responded, arguing, among other things, that,
 "even if Joe Wheeler was under no duty to inspect the power line that caused [Dominic]'s death, once Joe Wheeler became aware that the power line improperly and hazardously ran from its pole directly over a residence, this created a duty in Joe Wheeler to take appropriate action. The failure of Joe Wheeler to take any action once armed with this knowledge properly creates liability."
The trial court granted Joe Wheeler's summary-judgment motion, finding as follows:
 "Under the facts set forth in the record . . . Joe Wheeler owed no duty to . . . Dominic, to inspect electric transmission lines that were attached to its utility pole . . . that were owned, installed, controlled and maintained exclusively by [Hartselle]. The plaintiffs have failed to produce substantial evidence . . . that Joe Wheeler had knowledge or reason to know that [Hartselle]'s electric transmission lines were too close to the roof of the house occupied by [Dominic]. . . . This Court understands that certain of its conclusions disregard opinions expressed by [DiBiasi]'s expert in his affidavit. That is so because the disregarded opinions are not based on substantial evidence or on specific electric code provisions, accepted utility industry standards or legal authorities, and that would require the Court to engage in conjecture about unproven facts or impermissibly draw inferences from assumed facts or from other inferences for which there is no evidentiary support."[2] *Page 459 
DiBiasi now appeals, arguing that the trial court improperly granted Joe Wheeler's summary-judgment motion because, DiBiasi says, she produced substantial evidence showing that Joe Wheeler owed a duty to Dominic that it breached, resulting in his death.
 Issues
DiBiasi argues that the trial court improperly entered a summary judgment for Joe Wheeler because, she says, (1) DiBiasi presented evidence indicating that Joe Wheeler knew or should have known that its pole was being used to create an unreasonably dangerous condition and, therefore, it owed a duty to Dominic to require the removal of the dangerous condition, and (2) DiBiasi presented substantial evidence from which a jury could reasonably infer that Joe Wheeler knew or should have known that its utility pole was being used to run an uninsulated transmission line over the Holt residence in a manner that created an unreasonably dangerous hazard.
 Standard of Review
A summary judgment is appropriate only if the trial court finds that there are no genuine issues of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. Once a movant makes a prima facie showing that those two conditions are satisfied, the burden then shifts to the nonmovant to produce "substantial evidence" that creates a genuine issue of material fact. Ex parte CSXTransp., Inc., 938 So.2d 959, 961 (Ala. 2006). "Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte CSX Transp., 938 So.2d at 961
(quoting West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989)); § 12-21-12(d), Ala. Code 1975. "`"If the nonmovant [assuming the nonmovant has the burden of proof at trial] cannot produce sufficient evidence to prove each element of its claim, the movant is entitled to a summary judgment, for a trial would be useless."'" Prowell v. Children's Hosp. of Alabama,949 So.2d 117, 128 (Ala. 2006) (quoting Ex parte GeneralMotors Corp., 769 So.2d 903, 909 (Ala. 1999), quoting in turn and approving language from Justice Houston's special writing in Berner v. Caldwell, 543 So.2d 686,691 (Houston, J., concurring specially)).
On appeal, this Court reviews a summary judgment de novo.Ex parte Essary, [Ms. 1060458, Nov. 2, 2007] ____ So.2d ___, ___ (Ala. 2007). In doing so, we apply the same standard of review as did the trial court. Ex parteLumpkin, 702 So.2d 462, 465 (Ala. 1997). "`"Our review is subject to the caveat that we must review the record in the light most favorable to the nonmovant and must resolve all reasonable doubts against the movant."'" Ex parte CSXTransp., 938 So.2d at 962 (quoting Payton v. MonsantoCo., 801 So.2d 829, 833 (Ala. 2001), quoting in turn Exparte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184
(Ala. 1999)); Hanners v. Balfour Guthrie, Inc.,564 So.2d 412, 413 (Ala. 1990). Finally, this Court does not afford any presumption of correctness to the trial court's ruling on questions of law or its conclusion as to the appropriate legal standard to be applied. Ex parte CSX Transp.,938 So.2d at 962 (citing Ex parte Graham, 702 So.2d 1215,1221 (Ala. 1997)). *Page 460 
 Analysis
DiBiasi argued at trial, and she now argues on appeal, that Joe Wheeler owed a duty to Dominic. DiBiasi first argues that because Joe Wheeler is a utility, the duty it owed Dominic was a "`high and exacting'" duty because Joe Wheeler was supplying "`the very dangerous agency' of electricity." DiBiasi's brief at 26. DiBiasi also argues that Joe Wheeler owed a duty to Dominic because it knew or should have known of the danger created by the low-hanging uninsulated transmission lines that crossed over the Holt residence and, therefore, that Joe Wheeler had a duty to require that Hartselle remove "the dangerous condition." DiBiasi's brief at 3. We conclude, however, that Joe Wheeler did not owe Dominic a duty of care and that Joe Wheeler was entitled to a judgment as a matter of law.
In a negligence action the plaintiff must prove (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or injury; and (4) that the defendant's breach was the actual and proximate cause of the plaintiffs loss or injury. FordMotor Co. v. Burdeshaw, 661 So.2d 236, 238 (Ala. 1995). "`It is settled that for one to maintain a negligence action the defendant must have been subject to a legal duty,'"Thompson v. Mindis Metals, Inc., 692 So.2d 805, 807
(Ala. 1997) (quoting Morton v. Prescott, 564 So.2d 913,915 (Ala. 1990)), because "where there is no duty, there can be no negligence." City of Bessemer v. Brantley,258 Ala. 675, 681, 65 So.2d 160, 165 (1953). "`In Alabama, the existence of a duty is a strictly legal question to be determined by the court.'" Pritchett v. ICN Med. Alliance, Inc.,938 So.2d 933, 937 (Ala. 2006) (quoting Taylor v. Smith,892 So.2d 887, 891-92 (Ala. 2004)). The entry of a summary judgment for Joe Wheeler indicates that the trial court concluded that Joe Wheeler did not owe Dominic a duty; however, the existence of a duty is strictly a legal question and, under our standard of review, this Court does not afford the trial court's conclusions of law any presumption of correctness. Therefore, the strictly legal question this Court must answer is whether Joe Wheeler owed a duty to Dominic.
A. Did Joe Wheeler owe Dominic a "high and exacting" duty?
DiBiasi first argues that, as a company that supplies electric power, Joe Wheeler's duty of care "extends to the safeguarding of everyone in person or property, at places where he or it may rightfully be." DiBiasi's brief at 29 (citing Alabama PowerCo. v. Matthews, 226 Ala. 614, 147 So. 889 (1933)). She further urges that Joe Wheeler owed Dominic a "high and exacting" duty because Joe Wheeler is "in the business of supplying `the very dangerous agency' of electricity." DiBiasi's brief at 26 (citing Bloom v. City ofCullman, 197 Ala. 490, 73 So. 85 (1916)).
Joe Wheeler responds that "each of the Alabama cases cited by [DiBiasi] deals with the defendant utility company's failure to eliminate a defect in a power line that it owned. Moreover, each of these cases dealt with electricity supplied by the defendant." Joe Wheeler's brief at 34. Joe Wheeler's argument is well-taken. The authority on which DiBiasi relies is distinguishable. See Alabama Power Co. v. Emens,228 Ala. 466, 473, 153 So. 729, 734 (1934) ("Where, in the case at bar, a person engaged in the business of generating and distributing electricity for domestic and other uses also sells and engages to install electrical equipment in the residence of one of its patrons, and supply its current therefor for domestic use, it must exercise the care of a reasonably prudent man skilled in the practice and art of installing such equipment. . . . [T]he obligation assumed and the duty arising out of such circumstances are not unlike that *Page 461 
resting upon a physician or surgeon. . . .");Matthews, 226 Ala. at 615, 147 So. at 889-90
("Plaintiffs evidence tended to show that defendant [electric company] maintained and operated a transmission line . . . carrying a current of 44,000 volts; . . . that a current of electricity, thus diverted from the line, killed the mule instantly."); Bloom, 197 Ala. at 497, 73 So. at 88
("The degree of care resting upon the municipality, with respect to the means of transmitting its electric current over public thoroughfares was high and exacting, commensurate with the very dangerous agency it was employing in lighting its streets."). See also Alabama Power Co. v. Cantrell,507 So.2d 1295, 1297 (Ala. 1986) ("`"The duty of an electric company, in conveying a current of high potential, to exercise commensurate care under the circumstances, requires it to insulate its wires. . . ."'" (quoting Alabama Power Co. v.Brooks, 479 So.2d 1169, 1172 (Ala. 1985), quoting in turnBush v. Alabama Power Co., 457 So.2d 350, 353
(Ala. 1984))).
Joe Wheeler may have a "high and exacting" duty when it is supplying electricity over its own transmission lines; however, that question is not presented here. It is undisputed that Joe Wheeler merely supplied the pole to which Hartselle's transmission line was affixed and that it neither owned nor installed the power lines at issue and did not supply the power resulting in the death of Dominic. Therefore, we conclude that Joe Wheeler did not, in this instance, owe Dominic the "high and exacting duty" DiBiasi asserts it owed him.
 B. Was Joe Wheeler's knowledge of the alleged dangerous condition created by the transmission line sufficient to impose a duty on Joe Wheeler?
DiBiasi argues that Joe Wheeler's duty to Dominic arose because, she argues, Joe Wheeler knew or should have known that the low-hanging uninsulated transmission line created an unreasonably dangerous condition and that Joe Wheeler therefore had a duty to require Hartselle to remedy the condition. DiBiasi's brief at 29. Joe Wheeler argues that imposing a duty on it solely on the basis of knowledge "is contrary to well-established law in Alabama." Joe Wheeler's brief at 37.
"`In determining whether a duty exists in a given situation, however, courts should consider a number of factors, including public policy, social considerations, and foreseeability. The key factor is whether the injury was foreseeable by the defendant.'" Patrick v. Union State Bank,681 So.2d 1364, 1368 (Ala. 1996) (quoting Smitherman v.McCafferty, 622 So.2d 322, 324 (Ala. 1993)). In addition to foreseeability, Alabama courts look to a number of factors to determine whether a duty exists, including "`(1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened.'"Taylor, 892 So.2d at 892 (quoting Morgan v. SouthCent. Bell Tel. Co., 466 So.2d 107, 114 (Ala. 1985)).
DiBiasi argues that "once [Joe Wheeler] had actual or constructive knowledge of the deadly hazard, it had a duty to require the removal of the hazard," and she asserts that "notice or knowledge of a dangerous condition can give rise to a duty of care." DiBiasi's brief at 29 (citingCantrett, 507 So.2d at 1297 ("`"The duty of an electric company, in conveying a current of high potential, to exercise commensurate care under the circumstances, requires it to insulate its wires, and to use reasonable care to keep the same insulated wherever it may reasonably be anticipated that persons, pursuing business or pleasure, may *Page 462 
come in contact therewith."'" (quoting Brooks,479 So.2d at 1172, quoting in turn Bush,457 So.2d at 353))).
The holding of Cantrell is not as broad as DiBiasi posits. Cantrell imposes a specific duty on utilities to insulate their own lines, in specific circumstances, whenever it is reasonably anticipated that people may come into contact with those lines. 507 So.2d at 1297. Although the duty imposed on the utility companies in Cantrell is triggered when the utility company is aware that individuals may come in contact with its lines, Cantrell does not stand for the proposition that notice of a dangerous condition alone is sufficient to give rise to a duty of care.[3]
Further, none of the other cases cited by DiBiasi support her position. See Bush v. Alabama Power Co.,457 So.2d at 353-54 (holding Alabama Power Company to the same standard established in Cantrell); Carvalho v. Toll Bros. Developers, 143 N.J. 565, 576-77, 675 A.2d 209, 214 (1996) ("The existence of actual knowledge of an unsafe condition can be extremely important in considering the fairness in imposing a duty of care."); Dominici v. Wal-Mart Stores, Inc.,606 So.2d 555, 559 (La.Ct.App. 1992) (holding that "[w]hile we agree with [Wal-mart] that there is no statutory or jurisprudential requirement that Wal-Mart chain or lock the carts kept outside the store, this fact does not preclude the imposition of a duty on Wal-Mart not to create an unreasonable risk of harm with its shopping carts to motorists using the adjacent streets. Actual or constructive knowledge of a risk or injury gives rise to a duty to take reasonable steps to protect against injurious consequences resulting from the risk," but noting that "whether a legal duty is owed by one party to another depends upon the facts and circumstances of the case and the relationship of the parties. . . ."); Andrade v.Ellefson, 391 N.W.2d 836, 841 (Minn. 1986) ("Actual knowledge of a dangerous condition tends to impose a special duty to do something about that condition. Actual knowledge, not mere constructive knowledge, is required."); cf.Alabama Dep't of Corr. v. Thompson, 855 So.2d 1016,1021-22, 1025 (Ala. 2003) (noting that "`"[i]t is the general rule in Alabama that absent special relationships or circumstances, a person has no duty to protect another from criminal acts of a third party"'" (quoting Hail v. RegencyTerrace Owners Ass'n, 782 So.2d 1271, 1274 (Ala. 1999), quoting in turn Moye v. A.G. Gaston Motels, Inc.,499 So.2d 1368, 1372 (Ala. 1986)), and holding that "state correctional officers owe a general duty to the public, not a duty to a specific person, to maintain custody of inmates").
Although it may be true that foreseeability is a key factor in determining whether a duty exists in a particular circumstance, and knowledge of a dangerous *Page 463 
condition may establish foreseeability, Alabama caselaw does not hold that knowledge, by itself, is sufficient to impose a duty.
 "The rule which seems to have emerged from the decisions in the United States is that there will be liability in tort whenever misperformance [of a contract] involves a foreseeable, unreasonable risk of harm to the interests of the plaintiff or where there would be liability for performance without the contract. More simply stated, we must determine whether there is a legal duty sufficient to support an action for negligence. For that determination, three primary considerations are important: (1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened."
Morgan v. South Cent. Bell Tel. Co., 466 So.2d at 114.
Apart from premises liability, Alabama law does not support imposing a duty of care on a party based solely on that party's knowledge of the existence of a dangerous condition. Therefore, we hold that, even if Joe Wheeler knew, or should have known, of a dangerous condition, this alone is an insufficient basis on which to impose a duty of care on Joe Wheeler.
 C. Do the Morgan factors support imposing a duty on Joe Wheeler?
Finally, DiBiasi argues that, under the factors identified inMorgan, supra, Joe Wheeler owed a duty to Dominic. Assuming, without holding, that DiBiasi could establish that Joe Wheeler could have foreseen that an individual would be electrocuted by a low-hanging transmission line owned by Hartselle and attached to Joe Wheeler's pole, none of the otherMorgan factors support imposing a duty on Joe Wheeler.
1. The nature of Joe Wheeler's activities
DiBiasi argues that the nature of Joe Wheeler's activity, which it characterizes as the "generation and transmission of high powered electrical current to the public," is "hazardous and replete with danger requiring extreme caution." DiBiasi's brief at 27-28. Joe Wheeler notes that there was no such activity on its part and that its only activity "was to allow [Hartselle] to connect its line to a Joe Wheeler pole." We recognize that, generally speaking, Joe Wheeler is in the business of generating and transmitting electricity; however, even viewing the evidence, as we must, in the light most favorable to DiBiasi, the nonmovant, in this instance Joe Wheeler's only involvement in Dominic's death was that it had at some point allowed Hartselle to connect its line to a utility pole owned by Joe Wheeler.
2. The relationship between the parties
DiBiasi argues that the relationship between Dominic and Joe Wheeler was that "of a member of the community with an electrical co-op which has placed its instrumentalities of service into the community." DiBiasi's brief at 28. DiBiasi argues that the duty owed by Joe Wheeler "extends to the safeguarding of everyone, in person or property, at places where he or it may rightfully be." DiBiasi's reply brief at 11 (citing Alabama Power Co. v. Matthews, supra). As noted previously, Matthews involved the presence of high-voltage transmission lines and their proximity to people and property. See Matthews, supra. Matthews
is concerned with the danger arising from such lines, wherever they are located. However, the discussion in Matthews
appears to be directed to those who maintain or operate the lines; it does not address what relationship, if any, exists between the general public and the owner of a utility pole. *Page 464 
DiBiasi admits that Hartselle supplied the electricity to the Holt household and that it was Hartselle's transmission line that caused Dominic's death. DiBiasi's brief at 5 ("It is undisputed that the high-voltage line that caused the death of [Dominic] was owned by [Hartselle]."). Aside from the fact that that transmission line was attached to a pole owned by Joe Wheeler, there is no apparent relationship between Dominic and Joe Wheeler.
3. The type of injury or harm threatened
Finally, DiBiasi argues that "the type of injury or harm threatened was grave (i.e., death or severe injury by electrocution)." DiBiasi's brief at 28. In her reply brief, DiBiasi argues that "the circumstances presented here obviously involve a high potential for severe personal injury or death." DiBiasi's reply brief at 11. DiBiasi does not, however, address how Joe Wheeler's act of allowing another utility company to use its pole involved such a potential. In fact, DiBiasi does not allege that Joe Wheeler's act alone contributed to Dominic's death. Instead, DiBiasi argues that "[t]he combined actions of [Hartselle] and Joe Wheeler placed uninsulated high voltage transmission lines within just a few feet of the roof line of a private residence." DiBiasi's reply brief at 11. DiBiasi's arguments are premised on the transmission of electricity; DiBiasi has not addressed the type of injury or harm that was threatened by Joe Wheeler's act of supplying a utility pole.
Even assuming that Dominic's injuries were foreseeable, we conclude that none of the other Morgan factors support the existence of "a legal duty [owed by Joe Wheeler] sufficient to support an action for negligence." Morgan,466 So.2d at 114. Therefore, based on our review and application of the Morgan factors, we hold that Joe Wheeler did not owe a duty of care to Dominic.
 Conclusion
We conclude that Joe Wheeler did not owe a duty of care to Dominic and that Joe Wheeler was entitled to a judgment as a matter of law. Therefore, the summary judgment in favor of Joe Wheeler is affirmed.
AFFIRMED.
COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
[1] It appears that DiBiasi filed a second amended complaint after Joe Wheeler moved for a summary judgment. The second amended complaint added an additional allegation against Joe Wheeler:
 "e. Defendant Joe Wheeler used, or allowed defendant [Hartselle] to use, the Joe Wheeler electrical utility pole located on the south end of the residential property at 1607 Main Street West, Hartselle, Alabama, to run a 7,200 volt, uninsulated power line directly over the residence located on such property in a manner which did not comply with the minimum clearance safety standards of the electrical utility industry and, thus, created or allowed for the creation of a dangerous safety hazard."
[2] In response to Joe Wheeler's summary-judgment motion, DiBiasi attached the affidavit of her expert witness, John C. Frost. In June 2006, Joe Wheeler moved to strike Frost's affidavit "on the grounds that [the opinions] are based upon conjecture and speculation. `Evidence which affords nothing more than speculation, conjecture, or guess is wholly insufficient to warrant submission of a case to the jury.'" (Quoting Thompson v. Lee, 439 So.2d 113, 116
(Ala. 1983).) Although the trial court appears to have disregarded the opinions found in the affidavit, the record does not indicate that the affidavit was actually stricken.
[3] DiBiasi argues, in her reply brief, that Joe Wheeler's "failure to ensure that the attachment of the line does not directly create such [a] hazard, is an affirmative act which creates the risk that third parties might be injured. Under these circumstances, Joe Wheeler has a duty to third parties who may be injured as a result." DiBiasi's reply brief at 8-9. DiBiasi is correct that "[i]n a variety of circumstances, this Court has recognized a duty to foreseeable third parties, based on a general `obligation imposed in tort to act reasonably.'"Taylor, 892 So.2d at 893 (quoting Berkel Co.Contractors, Inc. v. Providence Hosp., 454 So.2d 496, 502
(Ala. 1984) (citing cases)). DiBiasi makes this argument and cites this authority for the first time in her reply brief. Arguments made for the first time in a reply brief are not properly before this Court. See The Dunes of GP,L.L.C. v. Bradford, 966 So.2d 924 (Ala. 2007) (noting the "settled rule that this Court does not address issues raised for the first time in a reply brief" (citingByrd v. Lamar, 846 So.2d 334, 341 (Ala. 2002))). We therefore do not address the argument.