**Steven Paul PHILLIPS and Phyllis Diane Phillips, Plaintiffs–Appellees,**

v.

**UNITED STATES of America, Defendant–Appellant.**

No. 91–8040.

United States Court of Appeals, Eleventh Circuit.

March 30, 1992.

---

Stuart M. Gerson, Asst. Atty., Gen., Civ. Div. Torts Branch, Washington, D.C., Paul F. Figley, Asst. Director, Gail K. Johnson, Stephen E. Handler, Trial Attys., Torts Branch, Dept. of Justice, Washington, D.C., for defendant-appellant.

Marc T. Treadwell, Chambless, Higdon and Carson, Paul M. Knott, Manley F. Brown, O'Neal, Brown & Sizemore, Macon, Ga., for plaintiffs-appellees.

Before JOHNSON,* CLARK,* and PECK,** Senior Circuit Judges.

JOHN W. PECK, Senior Circuit Judge:

Steven and Phyllis Phillips brought this action pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b), 2671–2680 (1988). After a bench trial, the district judge determined that the Army Corps of Engineers [Army Corps] had been negligent in its inspections of scaffolds in aircraft hangar extensions at Robins Air Force Base in Georgia. The district court further found that the Army Corps's negligence was the proximate cause of an accident in which Steven Phillips fell from the scaffolds.

The United States argues that the district court committed three errors. First,

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

the United States contends that the trial court erred in determining that the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a) (1988), did not apply to the Army Corps's conduct. Second, the United States contends that the court erred in failing to determine that the Phillipses' suit was barred by the independent contractor exception to the FTCA, 28 U.S.C. § 2671 (1988). Third, the government contends that the trial court erred in determining that the United States owed Steven Phillips an actionable duty under Georgia law. For the reasons stated below we find that the district court did not err in reaching its conclusions. Accordingly, we affirm.

## I. FACTS

The trial judge found the following facts. The construction project at Robins Air Force Base involved enlarging four aircraft hangars. Connor–Harben Construction Company [Connor–Harben] was the general contractor for the project; Plasteel Construction Company [Plasteel] was the subcontractor responsible for installing metal siding on the aircraft hangars. Plasteel employed Plaintiff–Appellee Steven Phillips. By July 1987 the contractors had completed two of the four hangars. Phillips was working on the third hangar. When the scaffolds collapsed on July 9, 1987, Phillips had not yet completed his first week on the job.

The Army Corps was not actively engaged in the construction work of the project at Robins Air Force Base. The contractors were responsible for the construction of the project and supervision of employees. The Army Corps's responsibilities, however, included assurance of job safety and accident prevention. At trial the Army Corps's resident engineer at Robins Air Force Base, Elton Cobb, testified that his office had the responsibility for assuring "safety with a dedicated commitment to free the job site of unsafe conditions and activities which may result in injury."

Before work began on the project, the Army Corps required its general contractor, Connor–Harben, to prepare a "job hazard analysis" for each phase of the construction. The district court concluded that after the contractor prepared the "job hazard analysis", the Army Corps was responsible for reviewing the analysis and ascertaining its adequacy, and that the job hazard analysis should have addressed the anchorage system for the suspended scaffolds. The district court found that the analysis did not mention suspended scaffolds. The Army Corps did not report that the job hazard analysis was inadequate.

At a "mutual understanding meeting" between the Army Corps and Connor–Harben, the Army Corps informed the general contractor that the company's Chief of Quality Control [CQC] would be required to submit daily "quality control reports", which were to include the results of all safety inspections. The daily quality control reports were submitted to an Army Corps employee known as a "Quality Assurance Representative" [QAR]. In his testimony the QAR's immediate supervisor and the Army Corps's Chief of Quality Assurance, Doug McMillan, admitted that he and the QAR had the responsibility for reviewing the daily quality control reports and for insuring that the required inspections had been performed. The district court found that prior to the beginning of Phillips's work shift on the day of the collapse of the scaffolds, no inspections of the scaffolds were documented. Prior to Phillips's shift, Connor–Harben's CQC, David Andrews, did not submit a quality control report concerning the suspended scaffolds. The Army Corps's QAR testified that he could not recall if he or anyone else had inspected the anchorage system of the scaffolds prior to Phillips's shift.

In addition the court found that in February 1987 the Army Corps's resident engineer, Elton Cobb, prepared a document entitled "Accident Prevention Plan of Action"; the document details specific responsibilities for Cobb, McMillan, and the QAR. This document lists among its requirements that these men perform "field safety inspections every time they visit a construction site"; it requires them "to take necessary action to insure that corrective measures are taken as needed."

The district court further found that to assist its employees in carrying out their duties, Army Corps personnel used the Corps's Safety Manual, which was received in evidence. The Army Corps's Safety Manual requires that the anchorages of suspended scaffolds be inspected prior to each work shift. According to the Safety Manual Connor–Harben's CQC, Andrews, had the duty to perform inspection of the scaffolds. The Army Corps had the duty to review the reports of the inspections. Furthermore, the Safety Manual requires a secondary means of anchorage for suspended scaffolds. Both Cobb and McMillan admitted that if they had known that the contractors used methods of anchoring scaffolds by suspending them from door rails without a secondary means of anchorage, then they would have stopped work and required a safer means of anchorage.

The trial court determined that Army Corps employees observed the scaffolds and the means of anchorage on several occasions as the scaffolds were suspended from the door rails. In reports in August and September 1986 (approximately ten months before Phillips's accident), an Army Corps QAR inspected the scaffolds. At first he declared that the anchorage of the scaffolds was "questionable". Later, the QAR amended his opinion and concluded that the means of anchorage for the scaffolds was "okay". The district court found that Army Corps representatives had ample opportunity to inspect the scaffolds' anchorage system.

The district court found that when working on the front of a hangar, the scaffolds were suspended from the underside of the overhang of the hangar's roof, and that because the Army Corps did not require Plasteel to use a secondary means of anchorage for its scaffolds, the company did not do so. The court determined that the scaffolds fell because they were not properly anchored on July 9, 1987 and because no secondary means of anchorage was employed. Steven Phillips sustained serious and permanent injuries as a result of his fall from the scaffolds as they collapsed. He incurred substantial medical expenses as well.

The district court concluded that the Army Corps had specific responsibilities with regard to the construction project's safety. See Federal Acquisitions Regulations System, Solicitation Provisions and Contract Clauses, 48 C.F.R. § 52.236–13 (1991). The court found that the Army Corps was required to insure that the means of anchorage of suspended scaffolds was inspected; furthermore, the judge found that Army Corps personnel were required to inspect the scaffolds on field inspections, and that the Army Corps failed to correct the scaffolds' safety violations. The district court held that the Army Corps discharged its safety responsibilities negligently. The district court awarded Steven Phillips $452,214.28 in economic damages and $500,000.00 for pain and suffering; the court awarded his wife, Phyllis Phillips, $100,000.00 for loss of consortium.

## II. DISCUSSION

### A. THE DISCRETIONARY FUNCTION EXCEPTION TO THE FTCA DOES NOT APPLY TO THE ARMY CORPS'S CONDUCT

■ The FTCA imposes civil liability on the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The FTCA contains several exceptions to the Act's broad waiver of sovereign immunity, however. See e.g. 28 U.S.C. §§ 2671–2680.

In the Supreme Court's most recent decision concerning the discretionary function exception to the FTCA, the Court reaffirmed the principle that the exception only covers government conduct that involves an element of judgment or choice. United States v. Gaubert, — U.S. —, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991); see also Berkovitz v. United

*States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). In *Gaubert,* the Court indicated that the critical questions to ask in assessing the applicability of the exception are: 1) whether or not the conduct of the individuals employed by the government agency involved any permissible exercise of policy judgment, and 2) whether or not that judgment is of the kind that the discretionary function was designed to protect. *Gaubert,* —— U.S. at ——, 111 S.Ct. at 1273. The Supreme Court has stated that the congressional intent in enacting the exception is "to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984).

Because resources are limited, it is axiomatic that discretion must be used in allocating available resources. The need for expedition versus the need for safety arises several times a day for many federal employees. Nevertheless, this does not mean that a federal employee's every choice is a policy judgment shielded from liability through the operation of the discretionary function exception. For instance, the government does not expect its employees who drive cars to make policy judgments every time they venture forth on the nation's roads. *See Gaubert,* —— U.S. at ——, 111 S.Ct. at 1280 (Scalia, J. concurring in part). Similarly, the government cannot expect Army Corps inspectors to make policy judgments concerning whether or not they should abide by the directives in the Corps's Safety Manual every day they go to work. *Compare Routh v. United States,* 941 F.2d 853, 856 (9th Cir.1991).

In the instant case, the United States claims that the Army Corps of Engineers used discretion and made policy judgments in designing and implementing its safety program at the construction project at Robins Air Force Base in Georgia. The United States argues that *Varig Airlines* is controlling in this case. In *Varig Airlines* the Supreme Court noted that the role of the Federal Aviation Administration [FAA] was to police conduct of private companies by monitoring their compliance with FAA regulations through a system of "spot checks"; the individual companies themselves were primarily responsible for complying with FAA regulations. *Varig Airlines,* 467 U.S. at 815–817, 104 S.Ct. at 2765–2766. The Supreme Court held that this was the type of policy decision that the discretionary function exception was designed to protect. *Varig Airlines,* 467 U.S. at 819–820, 104 S.Ct. at 2767–2768. The United States argues that in designing a safety program at Robins Air Force Base, the Army Corps made decisions similar to the FAA's policy decisions at issue in *Varig Airlines.*

The United States further argues that the Army Corps delegated to its contractors safety responsibilities for the construction project at Robins Air Force Base. The government argues that this Court's decision in *Johns v. Pettibone Corp.,* 843 F.2d 464 (11th Cir.1988) requires a reversal of the district court's decision. In *Johns* this Court held that the Tennessee Valley Authority [TVA] delegated the duty of providing a safe working environment to an independent contractor. The Court determined that the TVA's decision fell within the scope of the discretionary function exception. *Johns,* 843 F.2d at 467. The Court held that the government was not liable for the breach of a duty which the TVA had delegated to others. *Id.*

In addition the United States claims that decisions from other Courts of Appeals reinforce its arguments. In *Feyers v. United States,* 749 F.2d 1222 (6th Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985), the Sixth Circuit Court of Appeals held that the extent of the government's supervision constituted a policy choice within the discretionary function exception to the FTCA. *Feyers,* 749 F.2d at 1226. In *Feyers* the contract between the United States and its contractor, Chrysler, provided for "spot checks" by the government for safety violations. The United States assumed limited safety responsibilities because it determined that

Chrysler was a prudent contractor capable of monitoring its own safety programs. The court held that government agents made a policy decision to assume a limited role in monitoring compliance with safety regulations; the court determined this decision was subject to the discretionary function exception and that a violation was therefore not actionable. *Id.*

In a recent case before the Eighth Circuit Court of Appeals, the plaintiff argued that United States inspectors acted negligently in performing inspections. *See Tracor/MBA, Inc. v. United States*, 933 F.2d 663 (8th Cir.1991). The plaintiff claimed that government inspectors' negligent conduct did not involve an exercise of discretion, but involved a failure to comply with the inspectors' own safety procedures checklist. In *Tracor* the contract between the independent contractor and the government delegated primary responsibility for complying with the safety requirements to the contractor, but also required the government to insure that the contractor fulfilled its safety obligations. The government inspectors used a checklist to review compliance with safety requirements. The plaintiff claimed that the inspectors negligently failed to follow the checklist. *Tracor*, 933 F.2d at 665–666. The Court of Appeals for the Eighth Circuit held that the inspectors' conduct fell within the discretionary function exception because the checklist did not provide mandatory procedures for the inspectors to follow. *Id.* at 667. The court held that the Supreme Court's decision in *Varig Airlines* was controlling. *Tracor*, 933 F.2d at 668.

This Court is not persuaded by the United States' arguments. For the reasons outlined below we hold that *Varig Airlines, Johns, Feyers,* and *Tracor* are inapposite. Steven Phillips's cause of action against the United States arises out of Army Corps inspectors' actual negligence in discharging the Corps's mandatory safety responsibilities. The district court did not find that the Army Corps had delegated all of its safety responsibilities to independent contractors. As the district court found, the Army Corps assumed substantial, mandatory responsibilities for insuring a safe working environment and for insuring compliance with the Army Corps's Safety Manual. The district court determined the Army Corps assumed responsibilities above and beyond "spot checks" for safety violations. *Compare Drake Towing Co., Inc. v. Meisner Marine Constr. Co.*, 765 F.2d 1060, 1065–1066 (11th Cir.1985).

More specifically, the district court found the Army Corps was responsible for reviewing the project's "job hazard analysis". One of the purposes of this review was to insure the adequacy of the scaffolds' anchorage system. The district court determined the Army Corps was responsible for reviewing the project's "quality control reports". As the court found, one of the purposes of this review was to insure that safety inspections of the scaffolds were performed prior to each work shift. Furthermore, the court found that the Army Corps actually inspected and approved the suspended scaffolds' improper anchorage system. This Court is bound by the district court's findings of fact unless they are "clearly erroneous." Fed.R.Civ.P. 52(a). Since the record contains sufficient support for the district court's findings, we hold that the court's findings are not clearly erroneous.

The district court determined that even though Corps personnel frequented the construction site, the Army Corps failed to use ordinary care in carrying out its mandatory safety obligations. The court held that no policy judgments were involved in the discharge of the Army Corps's mandatory responsibilities. As indicated earlier, the district court found it absolutely clear that the Army Corps's negligent acts of omission and commission were proximate causes of the scaffolds' collapse. We hold that the district court's conclusions are not erroneous. Where there exists a mandatory responsibility, there is no room for a policy choice. In the instant case, Army Corps personnel did not obey the Corps's Safety Manual's directives. The Army Corps's conduct did not involve a permissible exercise of policy judgment. *See Gaubert,* —— U.S. at ——, 111 S.Ct. at 1274; *Berkovitz,* 486 U.S. at 542–543, 108 S.Ct. at

1962. We hold that the Army Corps's inspectors failed to discharge with ordinary care mandatory responsibilities imposed by the Corps's own regulations. Under these circumstances the United States may not rely upon the discretionary function exception to the FTCA in order to insulate itself from liability.

## B. THE INDEPENDENT CONTRACTOR EXCEPTION TO THE FTCA DOES NOT BAR THE PHILLIPSES' SUIT

■ The district court determined that the immediate mechanical cause of the scaffolds' collapse at Robins Air Force Base was improper anchorage. The United States contends that it was not the Army Corps's negligence but the contractors' negligence that caused the collapse of the scaffolds and Steven Phillips's subsequent injuries. The United States maintains that a Plasteel employee devised the method of anchorage and rigged the scaffolds according to this method on the day of the accident. Moreover, the United States contends Plasteel employees were aware that on July 9, 1987 Phillips had improperly rigged the lifeline that could have prevented many of his injuries. Therefore, the United States argues that the contractors ought to be liable as the parties primarily responsible for Phillips's injuries.

As the government correctly notes, the independent contractor exception to the FTCA, 28 U.S.C. § 2671, provides that the United States may not be held derivatively or vicariously liable for the acts of independent contractors. *See Dickerson, Inc. v. United States*, 875 F.2d 1577, 1582 (11th Cir.1989). There is no dispute that Connor–Harben and Plasteel are "contractors" as the term is used in 28 U.S.C. § 2671. The United States contends that because the Army Corps was not actively engaged in the construction work at Robins Air Force Base, the Army Corps cannot be liable since it did not exercise control over the physical performance of the contractors' work. To support this contention, the United States relies upon *Page v. United States*, 350 F.2d 28 (10th Cir.1965), *cert. denied*, 382 U.S. 979, 86 S.Ct. 552, 15

L.Ed.2d 470 (1966), and *Gibson v. United States*, 567 F.2d 1237 (3d Cir.1977), *cert. denied*, 436 U.S. 925, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978).

However, the United States ignores the fact that the district court found the Army Corps assumed substantial safety responsibilities for the construction project at Robins Air Force Base. The district court determined the Army Corps had the responsibility for reviewing the contractors' "job hazard analysis", which was created for the project, to insure that the contractors adequately addressed the hazards associated with suspended scaffolds. The job hazard analysis does not indicate that the scaffolds used on the project complied with the Army Corps's Safety Manual. Although the Army Corps's Safety Manual required both the use of a secondary means of anchorage, and quality control inspections of the scaffolds' anchorages prior to each shift, the Army Corps required Connor–Harben's CQC neither to use a secondary means of anchorage, nor to perform these inspections.

The district court determined the Army Corps's QAR, the QAR's supervisor, and the Army Corps's resident engineer had the responsibility for reviewing the project's quality control reports; these individuals had the responsibility for making sure that the scaffolds' inspections, which should have been reflected in these reports, were being performed. They had the responsibility for conducting field safety inspections as well. As the district court found, Army Corps personnel were required to take actions necessary to ensure safe performance of all work. From an examination of the record, this Court does not find that the trial judge's findings are clearly erroneous. The district court did not hold the United States liable for the negligence of contractors Connor–Harben or Plasteel, but held the Army Corps directly liable for its own negligence in carrying out its safety responsibilities. *See e.g. Emelwon, Inc. v. United States*, 391 F.2d 9, 10–13 (5th Cir.), *cert. denied*, 393 U.S. 841,

89 S.Ct. 119, 21 L.Ed.2d 111 (1968).[1] Therefore, we hold as well that the independent contractor exception to the FTCA does not insulate the United States from liability to the Phillipses.

## C. THE UNITED STATES OWES THE PHILLIPSES AN ACTIONABLE DUTY UNDER GEORGIA LAW

■ Neither party disputes that Georgia law applies as the law of the place where the act or omission occurred. *See* 28 U.S.C. § 1346(b). The United States contends that the Georgia Supreme Court found the government had a duty to the plaintiff in *United States v. Aretz*, 248 Ga. 19, 280 S.E.2d 345 (Ga.1981), solely because the government created a dangerous situation by failing to communicate to a manufacturer the change in classification of a hazardous substance. Since Plasteel devised and implemented the method of anchorage for the scaffolds in this case, the United States argues that the district court never found that the United States itself created a dangerous situation. Thus, the United States maintains that the Army Corps breached no actionable duty to Steven Phillips under Georgia law.

The district court found that the Army Corps had assumed responsibility for job safety on the construction project at Robins Air Force Base. The district court held the Army Corps had a duty to exercise ordinary care in the discharge of its safety responsibilities. The court held that the Army Corps's negligent acts of omission and commission in discharging its safety responsibilities were the proximate causes of the scaffolds' collapse. Contrary to the United States' assertions, Georgia law recognizes this duty and provides a remedy for its breach. *See Aretz*, 280 S.E.2d at 349–351; *see also Blossman Gas Co. v. Williams*, 189 Ga.App. 195, 375 S.E.2d 117, 119–120 (Ga.App.1988).

As the result of an explosion at a chemical plant, the plaintiff in *Aretz* brought suit against the United States. The plant provided chemicals for the United States pursuant to a military procurement contract. The United States assumed responsibility for classifying certain pyrotechnic materials used at the plant. The court found that the United States failed to implement a 1970 decision to change the classification of pyrotechnic materials. The court found that a classification change would have significantly reduced (if not eliminated) the possibility of a major explosion. The United States' negligence was found to be a proximate cause of the explosion at the plant. The Georgia Supreme Court held that the United States owed a duty of care to the employees of the plant either: 1) to classify properly the pyrotechnic materials initially, or 2) to communicate the change in classification. *Aretz*, 280 S.E.2d at 350–351. In *Aretz* and in the instant case the United States assumed safety responsibilities; in both cases the trial courts found that the government failed to discharge its safety responsibilities with ordinary care. This Court holds that under Georgia law the United States owed Steven Phillips a duty to exercise ordinary care in carrying out its safety responsibilities. The United States breached that duty.

## III. CONCLUSION

First, discharge of the Army Corps's safety responsibilities for the construction project at Robins Air Force Base did not involve the exercise of policy judgments. The discretionary function exception to the FTCA does not shield the United States from the judgment imposed by the trial judge. Second, the Phillipses' suit is not barred by the independent contractor exception to the FTCA. Third, the United States owed a duty to the Phillipses under Georgia law. Accordingly we conclude that District Judge J. Robert Elliott did not commit reversible error.

For the reasons stated above we AF-FIRM the order of the district court.

---

**1.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.