Franklin T. BOWMAN, Glenda Bowman, his wife, Carl Eugene Harris, and Kelly Harris, his wife, Plaintiffs,

v.

UNITED STATES of America.

No. 90–1123–CIV–J–20.

United States District Court,
M.D. Florida,
Jacksonville Division.

March 30, 1994.

Rodney S. Margol, Jacksonville, FL, for plaintiffs.

Joann J. Bordeaux, Christina Humway, Stephen M. Doyle, U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, DC, for defendant.

## ORDER

SCHLESINGER, District Judge.

Before the Court is the United States' Motion to Dismiss Plaintiffs' FTCA Claims (Doc. No. 46, filed June 3, 1992). Plaintiffs' Memorandum in Opposition to Motion to Dismiss of United States of America (Doc. No. 58) was filed August 5, 1992, and the Reply Memorandum of the United States' in Support of its Motion to Dismiss Plaintiffs' FTCA Claims (Doc. No. 66) was filed August 20, 1992. United States' Request for Oral Argument on its Motion to Dismiss Plaintiffs' FTCA Claims (Doc. No. 48) was filed June 3, 1992, and the United States' Renewal of Request for Oral Argument on Motion to Dismiss (Doc. No. 109) was filed July 6, 1993. Also before the Court are the United States' Motion for Summary Judgment (Doc. No. 59, filed August 7, 1992) and the Joint Stipulation Vacating Docket Control Order and Referring the Cause to Arbitration (Doc. No. 104, filed January 28, 1993).

## I. INTRODUCTION

Plaintiffs' claims against the United States are contained in Counts I and III of the Complaint (Doc. No. 1, filed December 13, 1990).[1] This is a civil action sounding in negligence seeking money damages against the United States for alleged personal injuries suffered by Franklin T. Bowman and Carl Eugene Harris, resulting from their exposure to the toxic chemical pyridine. Bowman's and Harris' wives are also plaintiffs in this action, asserting derivative claims for damages they have suffered as a result of their husbands' alleged injuries. Plaintiffs' claims against the United States are brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80.

Plaintiffs maintain that the United States was negligent in its disposal of containers of the toxic chemical pyridine. Additionally, Plaintiffs maintain that the United States was negligent for failing to warn of the existence of an unsafe condition it had created.

From 1940 through 1963, the United States Navy operated a Naval Station at Green Cove Springs, Florida. In 1963, the United States sold the former Naval Station to the City of Green Cove Springs. Two years after the City bought the property, J. Louis Reynolds purchased the property and established Reynolds Industrial Park on the site. J. Louis Reynolds transferred the property to Clay County Port, Inc. in 1981.

Bowman and Harris were instructors at National Training, Inc., teaching students to operate bulldozers, backhoes, and other heavy equipment. In 1988, National Training, Inc. operated from facilities it leased on Reynolds Industrial Park in Green Cove Springs, Florida. Bowman and Harris allege that on or about October 8, 1988, while supervising a group of students who were being trained in the use and operation of industrial land clearing equipment and machinery at Reynolds Industrial Park, numerous containers of the toxic chemical pyridine were unearthed and ruptured causing them to be exposed to the pyridine. Plaintiffs allege that the pyridine was negligently buried by the Navy.

The United States argues that, even if it was responsible for the burial of the pyridine, which it denies, Plaintiffs' claims alleging negligent burial of waste must be dismissed because they challenge discretionary judgments and choices made by the United States in connection with operating a naval shore station. The United States argues since there were no statutes, regulations, or policies prohibiting the acts which Plaintiffs seek to challenge, the discretionary function exception of the FTCA applies. Thus, the United States contends that the case must be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because the Court lacks jurisdiction. The United States also argues that Plaintiffs' failure to warn claim falls within the discretionary function exception.

## II. MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE FOR LACK OF SUBJECT MATTER JURISDICTION

Attacks on subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules

---

**1.** Counts II and IV of the Complaint have been dismissed with prejudice. *See* Stipulation of Dismissal of Claim Against Defendant, Clay County Port, Inc. (Doc. No. 61, filed August 7, 1992).

of Civil Procedure come in two forms. "Facial attacks" on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar,* 919 F.2d 1525, 1528 (11th Cir.1990) (citing *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.),[2] *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir. 1977))). "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

On a facial attack, as with a Rule 12(b)(6) motion, the allegations of the complaint are taken to be true. *See Lawrence,* 919 F.2d at 1529 (citing *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)). However, when the attack is factual,

> the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence,* 919 F.2d at 1529 (quoting *Williamson,* 645 F.2d at 412–13 (quoting *Mortensen,* 549 F.2d at 891)).

## A. DISCRETIONARY FUNCTION EXCEPTION

■ The United States cannot be sued except as it consents to be sued. *See Dalehite v. United States,* 346 U.S. 15, 30, 73

S.Ct. 956, 965, 97 L.Ed. 1427 (1953). Congress, through the provisions of the FTCA, has authorized suit against the United States

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). However, Congress has specifically excepted from the FTCA's limited waiver of sovereign immunity "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This is known as the "discretionary function exception" to the FTCA.

If asserted liability under the FTCA falls within an exception, the Court lacks subject matter jurisdiction. *See Boda v. United States,* 698 F.2d 1174, 1176 (11th Cir.1983). Defendant contends that Plaintiffs' claims are based upon government acts or omissions which are protected by the discretionary function exception to the FTCA.

■ To determine whether challenged government conduct falls within the discretionary function exception, the Court must engage in a two-part inquiry. *See Autery v. United States,* 992 F.2d 1523 (11th Cir.1993). First, the court must look to the nature of the challenged conduct and consider whether the conduct involves an element of judgment or choice. *See id.* at 1526. The exception does not apply where a federal statute or regulation "specifically prescribes a course of action for an employee to follow." *Powers v. U.S.,* 996 F.2d 1121, 1124 (11th Cir.1993) (quoting *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991)); *see Autery,* 992 F.2d at 1526; *see, e.g., Phillips v. United States,* 956 F.2d 1071, 1074–77 (11th Cir.1992) (no discretion

**2.** All cases decided by the former Fifth Circuit Court of Appeals prior to the close of business on September 30, 1981, are binding on the Eleventh

Circuit and on all district courts within the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

in Army Corps of Engineers' implementation of mandatory safety responsibilities); *Dickerson, Inc. v. United States,* 875 .F.2d 1577, 1581–82 (11th Cir.1989) (no discretion where EPA policies specifically prescribed course of action for waste removal).

■ "[I]f a government official in performing his statutory duties must act without reliance upon a fixed or readily ascertainable standard, the decision he makes is discretionary and within the discretionary function exception." *Powers,* 996 F.2d at 1124 (quoting *Alabama Electric Cooperative, Inc. v. United States,* 769 F.2d 1523, 1529 (11th Cir.1985) (quoting *Miller v. United States,* 710 F.2d 656, 663 (10th Cir.), *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983))). The relevant inquiry is whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner. *See Autery,* 992 F.2d at 1528.

■ Second, the court must determine whether the judgment exercised "is of the kind that the discretionary function exception was designed to shield." *Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273 (quoting *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1959, 100 L.Ed.2d 531 (1988)); *see Autery,* 992 F.2d at 1526–27. The discretionary function exception was enacted to protect "the discretion of the executive or administrator to act according to one's judgment of the best course." *Dalehite,* 346 U.S. at 34, 73 S.Ct. at 967. Its purpose is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort...." *Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1273 (1991) (quoting *United States v. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984)).

## 1. NEGLIGENT BURIAL CLAIM

### a. Did the burial of the pyridine involve an element of judgment or choice.

The Court must first determine whether the challenged act violated a mandatory regulation or policy that allowed no judgment or choice. *See Autery,* 992 F.2d at 1526. "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation or policy specifically prescribes a course of action for an employee to follow,' because 'the employee had no rightful option but to adhere to the directive.'" *Id.* (quoting *Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273 (quoting *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958–59)). The relevant inquiry is whether controlling statutes, regulations and administrative policies mandated a method for disposal of the pyridine. *See, e.g., Phillips,* 956 F.2d at 1076 ("Where there exists a mandatory responsibility, there is no room for policy choice"). If not, then the Navy's decision to employ a particular disposal method for the chemical is protected by the discretionary function exception.

■ Whether a policy establishes a mandatory requirement so as to deprive government employees of discretion depends on the terms of the particular policy at issue. *See Autery,* 992 F.2d at 1529. Plaintiffs argue that the alleged Navy burial of the pyridine did not comply with certain provisions in War Department Technical Manual 5–634, *Refuse Collection and Disposal,* dated October, 1946 ("War Dept. Manual"). However, the War Dept. Manual did not apply to the Navy. The War Department was the predecessor agency to the Department of the Army. Section 205(b) of the National Security Act specifies that "[a]ll laws, orders, regulations, and other actions relating to the Department of War ... shall ... be deemed to relate to the Department of the Army." The Department of the Navy and the United States Navy were never part of the Department of War. The War Dept. Manual did not prescribe a course of action for the Navy to follow and, therefore, its provisions are not relevant to the first prong of the discretionary function analysis.

■ Next, Plaintiffs argue that the alleged Navy burial of the pyridine did not comply with certain provisions in the United States Navy Bureau of Yards and Docks Technical Publication TP–Pu–1, *Refuse Disposal,* dated September 1, 1952, ("Refuse Disposal Manual"). The Refuse Disposal

Manual was published as a "practical guide," and as an "aid in the design, construction, and maintenance of disposal facilities ..." Refuse Disposal Manual at iii. The purpose of this publication was to "provide detailed information to serve as a **guide** in organizing an efficient collection, segregation, and disposal system at a naval establishment." Refuse Disposal Manual at A1.01. Unlike the War Dept. Manual, which states that it "outlines procedures to be followed....," War Dept. Manual at 1, the Refuse Disposal Manual is not a mandatory regulation.

▮▮▮ Furthermore, even if the Refuse Disposal Manual is considered a mandatory regulation, the Refuse Disposal Manual did not address the issue of disposing of pyridine. Under the Scope clause, the Refuse Disposal Manual provides that "the procedures described herein are applicable to all solid forms of waste resulting from human activities, except the following specialized forms of waste: dehydrated sewage sludge, industrial process wastes such as oil sludge and sandblast refuge ... Suggested methods of disposing of **some types of oil sludge** are given in paragraph B3.07. **The disposal of ... other specialized wastes ... is to be covered in other publications.**" (emphasis added).

The Definitions section states the following:

. . . . .

2. WASTES.—The various kinds of wastes are classified and defined as follows:

. . . . .

g. Liquid and Semiliquid Combustible Wastes.—The term includes petroleum sludge, crankcase oils, greases, and tars.

Refuse Disposal at ¶ A1.04.

Paragraph B3.07, titled "Disposal of Liquid or Semiliquid Combustible Wastes," states that

Petroleum sludge, crankcase oils, refuse oil from bilges of ships, and tars may be salvaged and used as road-conditioning materials. When this is not feasible, such wastes may be burned in open pits; they should not be burned in incinerators ex-

cept under special conditions. In rare cases this type of material may be dumped on wastelands, but care must be taken to guard against seepage to the waterfront or contamination of the water supply. Containers for removing this type of waste, and methods of handling, must comply with local fire regulations.

Refuse Disposal at ¶ B3.07.

Plaintiffs argue that since pyridine is a liquid or semiliquid combustible waste, it should have been burned rather than buried. However, after reading Paragraph B3.07 in conjunction with the Scope Clause ("suggested methods of disposing of some types of oil sludge are given in paragraph B3.07. The disposal of ... other specialized wastes ... is to be covered in other publications"), it appears that Paragraph B3.07 does not cover all liquid or semiliquid combustible wastes. Rather, Paragraph B3.07 merely covers some types of oil sludge, namely, petroleum sludge, crankcase oils, refuse oil from bilges of ships, and tars.

Plaintiffs have failed to establish that the Navy's Refuse Disposal Manual prescribed or proscribed specific methods for disposal of the chemical pyridine. The Navy's Refuse Disposal Manual did not "specifically prescribe a course of action," *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958, regarding the chemical pyridine. Plaintiffs have failed to identify a single mandatory and specific duty which the Navy violated.

**b. Is the challenged conduct the kind that the discretionary function exception was designed to shield?**

▮▮▮ The conduct in question, in order for the discretionary function exception to apply, must be "grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 325, 111 S.Ct. at 1275. In *Gaubert*, the Court discussed the type of conduct that would be considered grounded in judgment or choice but not in developing or carrying out public policy.

[If a governmental official] drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant ex-

ercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy. *Autery,* 992 F.2d at 1527 (quoting *Gaubert,* 499 U.S. at 325 n. 7, 111 S.Ct. at 1275 n. 7).

 When established governmental policy, as expressed or implied, allows government agents to exercise discretion, it must be presumed that agent's acts are grounded in policy when exercising that discretion, for purposes of the discretionary function exception. *See Gaubert,* 499 U.S. at 324, 111 S.Ct. at 1274–75. Any decision which balances competing considerations or identifiable policy factors, such as budgetary constraints, safety concerns, or allocation of limited resources, may be discretionary. *See Koch v. U.S.,* 814 F.Supp. 1221 (M.D.Pa. 1993). The Navy's judgment on the method for disposing of the pyridine was the type normally involving considerations of economic, social, or political policy, protected under the discretionary function exception.

Thus, this Court lacks subject-matter jurisdiction over Plaintiffs' negligent burial claim because it is covered by the discretionary function exception to the FTCA.

## 2. FAILURE TO WARN CLAIM

Plaintiffs argue that their failure to warn claim does not fall within the discretionary function exception because the Navy did not make a conscious decision not to warn. The Court disagrees with Plaintiffs' argument that the discretionary function exception cannot apply in the absence of a conscious decision. "The statute is not so limited; it exempts '[a]ny claim based upon ... the failure to exercise or perform a discretionary function ...' *In re Consolidated U.S. Atmospheric Testing Litigation,* 820 F.2d 982 (9th Cir. 1987), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988) (quoting 28 U.S.C. § 2680(a)).

"If the decision to issue or not to issue a warning is within the discretionary function exception, then logically the failure to consider whether to issue one necessarily falls within the exception as well. Any other interpretation of the statute would create insurmountable problems in its administration ... As the Supreme Court said in *Varig,* one must look to the 'nature of the conduct' to determine whether the exception applies. In this case, the relevant conduct is the issuance of 'warnings,' not the decision-making process or the failure to make a conscious, explicit decision." *Id.* at 998–99.

 It is "irrelevant whether the alleged failure to warn was a matter of 'deliberate choice,' or a mere oversight." *Allen v. United States,* 816 F.2d 1417 (10th Cir.1987), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 694, 98 L.Ed.2d 647 (1988). The purpose of the discretionary function exception is, in part,

to provide immunity against liability for the consequences of negligent failure to consider the relevant, even critical, matters in discretionary decisionmaking ... If it were otherwise, a judgment-based policy determination made at the highest levels, to which all would concede that the statutory exception applies ..., would result in no immunity if the decision could be shown to have been made without consideration of important, relevant factors, or was a decision negligently reached. If that reasoning were sound, the discretionary function exception would be inapplicable in every case in which a negligent 'failure to consider' a relevant risk could be proved.

*Allen,* 816 F.2d at 1422 n. 5.

In *Ford v. American Motors Corp.,* 770 F.2d 465 (5th Cir.1985), the plaintiff purchased a used jeep at a surplus sale held by the United States Postal Service. The plaintiff was injured when the jeep tipped over. The plaintiff sued the United States asserting that the government was negligent in selling the jeep without warning the buyer of the propensity of the jeep to overturn in certain situations. The Fifth Circuit held that the discretionary function exception applied and that, accordingly, it lacked subject matter jurisdiction over the plaintiff's claim. "Whether considered as a commission or omission, the decision not to issue cautions or warnings about the increased rollover potential was ... within the discretionary parameters of the Postal Service." *Ford,* 770 F.2d at 467.

In *Ford,* the Fifth Circuit did not base its decision on the fact that the government had

not created the hazard. Rather, the *Ford* court stated that the decision to warn or not to warn of known or suspected hazards is a protected discretionary decision. *See Ford,* 770 F.2d at 467. Similarly, in *Lively v. United States,* 870 F.2d 296 (5th Cir.1989), the Fifth Circuit held that the government's decision to not place warnings on bags of asbestos imported for stockpiling was protected by the discretionary function exception.

 Like the Postal Service in *Ford,* and the General Services Administration in *Lively,* the Navy in the instant case chose to proceed with a program without warning of the actual or suspected hazards of the substance to which it might be exposing the public. "The evaluation of actual or suspected hazards, and the decision to proceed in a particular manner in light of those hazards, are protected discretionary acts, and not subject to tort claims in the district court." *Ford,* 770 F.2d at 467 (citing *George v. United States,* 703 F.2d 90 (4th Cir.1983); *Miller v. United States,* 710 F.2d 656 (10th Cir.), *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983)). "The decision not to issue a warning ... is the very type of policy decision § 2680(a) is designed to protect." *Id.* at 468 (quoting *Shirey v. United States,* 582 F.Supp. 1251, 1258 (D.S.C.1984)).

The instant case is not governed by the line of cases holding that once the government makes a policy decision protected by the discretionary function exception, it must proceed with due care in the implementation of that decision. *See, e.g., Indian Towing Co. v. United States,* 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955) (The government was liable for the negligent operation of a lighthouse; the Coast Guard was not obligated to undertake the lighthouse service, "but once it exercised its discretion to operate the [lighthouse], it was obligated to use due care ... and to ... give warning that it was not functioning."); *Reminga v. United States,* 631 F.2d 449 (6th Cir.1980) (the discretionary function exception did not apply to the government's negligent preparation of a navigational chart; having undertaken to issue charts locating navigational hazards, the FAA was liable for doing so carelessly). The

Navy did not decide to warn and then do so negligently. Rather, the Navy failed to take any action regarding warning the public. The Navy's failure to warn of its alleged burial of the pyridine is a matter that is susceptible to the balancing of political, economic, and social factors.

Arguably, it was negligent for the Navy policymakers to have failed to warn the public, but it is for just such negligent decision making that Congress has determined that the government is to be immune from tort liability. Accordingly, Plaintiffs' claims based on the failure to issue warnings must also be dismissed. Were the Court to hold otherwise, the Court would have to substitute its judgment for that of the Navy as to what safety precautions are warranted. Such judicial "second-guessing" of policy judgments is what the discretionary function exception was designed to prevent. *Varig Airlines,* 467 U.S. at 820, 104 S.Ct. at 2767–68.

Accordingly,

(1) The United States' Request for Oral Argument on its Motion to Dismiss Plaintiffs' FTCA Claims (Doc. No. 48) is **DENIED,**

(2) The United States' Renewal of Request for Oral Argument on Motion to Dismiss (Doc. No. 109) is **DENIED,**

(3) The United States' Motion to Dismiss Plaintiffs' FTCA Claims (Doc. No. 46) is **GRANTED,**

(4) Counts I and III of the Complaint are **DISMISSED** because the Court lacks jurisdiction to hear them,

(5) The United States' Motion for Summary Judgment (Doc. No. 59) is **MOOT,**

(6) The Joint Stipulation Vacating Docket Control Order and Referring the Cause to Arbitration (Doc. No. 104) is **MOOT,** and

(7) The Clerk is directed to close the file.

**DONE AND ORDERED.**