[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-15023
Non-Argument Calendar
_____

DC Docket No. 5:18-cv-00244-MTT


DUSTIN HOOSE,

                                                        Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

                                                        Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(September 29, 2020)

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Dustin Hoose, a delivery driver, was injured by an unsecured gate as he was driving on an Air Force base in Georgia. Hoose sued the United States under the Federal Tort Claims Act, but the district court granted summary judgment for the government. On appeal, Hoose argues that the district court erred when it concluded that, as a matter of law, he assumed the risk of injury when he attempted to drive around the gate's arm. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Hoose stocked Robins Air Force Base in Georgia with Red Bull products weekly for eight months. Hoose's round included the base's commissary. To get to and from the commissary, Hoose had to drive through a gated entry made up of two swinging gate arms, one on each side of the road. Generally, the gate was open when Hoose made his deliveries, but sometimes it was not. When not open, the gate was closed with a chain and padlock, so Hoose would have to wait for a commissary employee to open it. To open the gate, the employee would push each arm towards the curb and let it rest there. Hoose knew that the employees did not secure the gate arms on either side when the gate was open. The gate was left unattended when the entrance was open to vehicles during the day.

Five to six times, Hoose had seen the open gate arms moved by the wind. Depending on which way the wind was blowing, the arms would either swing by a matter of inches away from or into the roadway. Hoose thought that on a windy day

2

the arms might swing into the roadway and become a hazard, so he informed his supervisor about it in the hope that he would discuss the gate with Air Force personnel.    Hoose also knew based on his past experience working with Occupational Safety Health Administration standards that gates should be secured in either an open or closed position.

On November 4, 2015, a cloudy and windy day, Hoose drove through the fully open gates to the commissary.  He made his delivery and started driving back.  He approached the gate at about fifteen miles per hour and noticed that its right arm was over the curb and several feet into the roadway.  The arm, though in the roadway, was stationary, so, about thirty feet from the gate, Hoose moved to the center of the road, straddling the lanes.  About four or five feet from the gate, Hoose felt a gust of wind blow through his open window and saw the gate arm move toward the front fender of his delivery truck.  When the gate arm struck the vehicle, Hoose panicked and hit the gas, causing the gate arm to crash through the windshield and strike Hoose in the head.

Hoose sued the government under the Federal Tort Claims Act for premises liability negligence, and the government filed a motion for summary judgment, arguing that Hoose assumed the risk of an accident when he chose to drive around the gate arm.  The district court granted the government's motion, concluding that there was no genuine issue of material fact that Hoose had "knowledge and

3

appreciation of the hazard" when he voluntarily drove around the unsecured gate on a windy day.  Hoose appeals the district court's order.

## STANDARD OF REVIEW

We review the grant of summary judgment de novo.  Holloman v. Mail-Well Corp., 443 F.3d 832, 836 (11th Cir. 2006).  "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party."  Id. at 836–37; see Fed. R. Civ. P. 56(a).

## DISCUSSION

Hoose argues that the district court erred in granting the government summary judgment because there was a genuine dispute about whether he assumed the risk. Under the Federal Tort Claims Act, the district court has jurisdiction over personal injury claims against the United States "if a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  The Act "was designed to provide redress for ordinary torts recognized by state law."  Ochran v. United States, 273 F.3d 1315, 1317 (11th Cir. 2001) (internal quotation marks omitted).  The government does not dispute that it has waived sovereign immunity, so this case is governed by Georgia law.  See Phillips v. United States, 956 F.2d 1071, 1072, 1078 (11th Cir. 1992) (applying

Georgia law to a negligence claim against the government arising from an accident at Robins Air Force Base).

Georgia law provides that a property owner is liable to people invited onto his property "for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1. Assumption of the risk is an affirmative defense to a premises liability claim. Sones v. Real Est. Dev. Grp., Inc., 606 S.E.2d 687, 689 (Ga. Ct. App. 2004). A defendant establishes this defense by showing "(1) that the plaintiff had some actual knowledge of the danger[,] (2) that he understood and appreciated the risk therefrom, and (3) that he voluntarily exposed himself to such risk." York v. Winn-Dixie Atlanta, Inc., 459 S.E.2d 470, 471 (Ga. Ct. App. 1995). The plaintiff must have acted "with a full appreciation of the danger involved and without restriction from his freedom of choice either by the circumstances or by coercion." Id.; see also Landings Ass'n v. Williams, 728 S.E.2d 577, 580 (Ga. 2012) (holding that, as a matter of law, the plaintiff assumed the risk of an alligator attack when she "chose to go for a walk at night near a lagoon in a community in which she knew wild alligators were present"). Summary judgment based on the defense of assumption of the risk is appropriate if "the facts are so plain and palpable that they demand a finding by the court as a matter of law." Bass Custom Landscapes, Inc. v. Cunard, 575 S.E.2d 17, 20 (Ga. Ct. App. 2002).

The district court correctly concluded that there was no genuine dispute that Hoose assumed the risk of driving past the partially opened gate. Hoose had actual knowledge of the danger. He knew that warehouse employees did not secure the gate arms when they were open. Five or six times he had seen the gate move on windy days, sometimes into the roadway. He also appreciated the risk. He knew that safety regulations called for gates to be secured in either an open or closed position. And he even informed his supervisor of the danger posed by the gate swinging into the roadway on a windy day. On November 4, 2015, he voluntarily exposed himself to that risk. He testified that it was a windy day. While driving slowly towards the gate, he observed from a distance of thirty feet that one of the gate's arms was in the roadway. Though he knew that the wind could cause the gate to move, he nonetheless attempted to drive around it.

Hoose argues that he did not have actual knowledge of the gate's danger because he had only previously seen it move inches, but it moved several feet on the day of his accident. But regardless of whether the gate had previously moved only inches, Hoose knew that it could move in the wind. And Hoose had even anticipated the specific hazard of the gate arms entering the roadway to the point that he notified his supervisor about it.

Hoose also argues that he did not appreciate the risk from a gate that was stationary and in the roadway because when he first drove through the gate on the

6

morning of his accident, it was on the side of the road. That contention also fails. Simply because the gate was not in the roadway when he first drove through it on the morning of the accident does not mean that Hoose thought it could never move or that it could not move more when it was already in the roadway. Hoose understood that the unsecured gates, even when previously stationary, could be blown in the wind. Hoose also understood that a gate in the roadway posed a hazard. And he had seen the unsecured gate swing both into and out of the roadway "depend[ing] on which way the wind was blowing." Consistent with Hoose's understanding, the direction of the wind could cause a gate already in the roadway to move further into the roadway. Hoose had the knowledge of "the specific, particular risk of harm associated with the activity or condition that proximately causes injury" that Georgia law requires for assumption of the risk. See Vaughn v. Pleasent, 471 S.E.2d 866, 868 (Ga. 1996).

Because the district court did not err when it granted the government's motion for summary judgment, we affirm.

**AFFIRMED.**